# EXHIBIT "D"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 03-10945(MFW)
                                    . (Jointly Administered)
FLEMING COMPANIES, INC.,            .
et al.,                             . 824 Market Street
                                    . Wilmington, Delaware  19801
            Debtors.                .
                                    . July 26, 2005
. . . . . . . . . . . . . . . . .  . 3:03 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For PCT:                    Pachulski, Stang, Ziehl, Young,
                            Jones & Weintraub, P.C.
                            By:  LAURA DAVIS JONES, ESQ.
                            919 Market Street
                            16th Floor
                            P.O. Box 8705
                            Wilmington, DE  19899


For Northern California     Morris, Nichols, Arsht & Tunnell
Advertising Group Retailers: By:  DANIEL B. BUTZ, ESQ.
                            1201 North Market Street
                            P.O. Box 1347
                            Wilmington, DE 19899


Audio Operator:             Danielle R. Gadson


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

2

APPEARANCES (Cont'd.):

For PCT:                        Kirkland & Ellis, LLP
                               By:  GREER SHAW, ESQ.
                                    ERIN BRADY, ESQ.
                                    INEZ MARKOVICH, ESQ.
                                    HEIKO SCHULTZ, ESQ.
                                    (Telephonically)
                               777 South Figueroa Street
                               Los Angeles, CA  90017

For PCT:                        Pepper Hamilton, LLP
                               By:  ROBERT S. HERTZBERG, ESQ.
                               Suite 1600
                               1201 Market Street
                               P.O. Box 1709
                               Wilmington, DE 19899

For PCT:                        Pepper Hamilton, LLP
                               By:  JAMES CARRIGAN, ESQ.
                               Suite 1600
                               1200 Market Street
                               P.O. Box 1709
                               Wilmington, DE 19899

For Selby's Market:             Finkel, Goldstein, Rosenbloom &
                               Nash
                               By:  NEAL ROSENBLOOM, ESQ.
                               26 Broadway, Suite 711
                               New York, NY 10004

For Maverick Logistics          Ferry, Joseph & Pearce, P.A.
WW Provisions:                  By:  LISA L. COGGINS, ESQ.
                               824 Market Street, Ste. 904
                               P.O. Box 1351
                               Wilmington, DE 19899

For Williams Sausage Co.        Fox Rothschild, LLP
                               By:  SETH A. NIEDERMAN, ESQ.
                               Citizens Bank Center
                               919 North Market Street
                               Ste. 1300
                               Wilmington, DE 19899

J&J COURT TRANSCRIBERS, INC.

3

APPEARANCES (Cont'd)

For AM:                           Ashby & Geddes
                                  By:  AMANDA M. WINFREE, ESQ.
                                  222 Delaware Avenue
                                  17th Floor
                                  P.O. Box 1150
                                  Wilmington, DE 19899

For Harvest Ventures:             Monzack & Monaco, PA
                                  By: KEVIN J. MANGAN, ESQ.
                                  1201 North Orange Street
                                  Suite 400, P.O. Box 2031
                                  Wilmington, Delaware 19899-2031

For Country Fresh Meats:          First Law Group, S.C.
                                  By:  DAVID A. RAY, ESQ.
                                  2900 Hoover Avenue, Ste. A
                                  Stevens Point, Wisconsin 54481

For Schuster:                     Frey, Petrakis, Deeb, Blum,
                                  Briggs & Mitts, P.C.
                                  By:  INEZ M. MARKOVICH, ESQ.
                                  601 Market Street, Suite 2600
                                  Philadelphia, Pennsylvania 19103

For Hannaman Chain USA, Inc.      Castellan Law Group
                                  By: EDWARD TU, ESQ.
                                  251 South Lake Avenue
                                  Suite 201
                                  Pasadena, California 91101

                                  - - -

4

1          THE COURT:  Good afternoon.

2          MS. JONES:  Good afternoon, Your Honor, Laura Davis

3   Jones of Pachulski, Stang, Ziehl, Young, Jones & Weintraub on

4   behalf of the PCT in the Fleming Company's case.

5          Your Honor, if I may refer the Court to the Notice of

6   Agenda that was filed, Matters one through 5 are continued as

7   indicated on the agenda.  Matter 6, Your Honor, has entered an

8   order, thank you.  Matter 7, that matter, Your Honor, is being

9   withdrawn once it's resolved.  Matter 8, the Court had entered

10  an order.  It brings us to Matter 9, Your Honor, which is our

11  32nd omnibus objection to claim filed by the PCT.

12         Your Honor, there was one response to that.  That has

13  been withdrawn.  We did submit a Certification of Counsel

14  yesterday with respect to that.

15         THE COURT:  All right, I haven't seen that, but I

16  have no questions on that so I'll enter the order when I see

17  the Certificate of Counsel.

18         MS. JONES:  Thank you, Your Honor.  Your Honor, that

19  brings us to the matters that are set for scheduling

20  conferences or status.  Matter 10, the Motion of Northern

21  California Advertising Group for payment of administrative

22  expense.  I understand both counsel are on the phone with

23  respect to that.

24         THE COURT:  Who wants to go first?

25         MR. SHAW:  Your Honor, this is Greer Shaw, Kirkland &

J&J COURT TRANSCRIBERS, INC.

1  Ellis in Los Angeles for the PCT.  I think I can represent on
2  behalf of both parties that we have been engaged in discovery.
3  I think it's been winding down.  There's still some outstanding
4  interrogatories from the advertising group to the PCT.  Our
5  responses are due August 1st, and we expect to have those
6  produced to the advertising group on that day.  With that said,
7  I'll let counsel for the advertising group state his client's
8  position.

9      MR. BUTZ:  Daniel Butz from Morris, Nichols, Arsht &
10 Tunnell, on behalf of the Northern California Advertising Group
11 Retailers.  I agree with everything that counsel for PCT has
12 stated.  Once we receive the responses to our interrogatories I
13 would expect that -- or I believe both parties would like to
14 have an opportunity to supplementally brief the issues
15 considering that during the course of the discovery a number of
16 facts have come to light which changed the landscape a little
17 bit and we would ask the Court to allow us to put together some
18 sort of briefing schedule so that this matter can be fully
19 briefed and then heard some time perhaps in late September
20 depending on what opposing counsel --

21      THE COURT:  Any objection to that suggestion?

22      MR. SHAW:  Your Honor, this is Mr. Shaw again.  I
23 agree that supplemental round of briefing is appropriate.  I'm
24 not quite sure about late September as a hearing date, but in
25 any event I do think supplemental round of briefing would be

6

1  helpful for both sides.

2          THE COURT:  All right, why don't I suggest this.

3  I'll ask the parties to talk on the timing of that and get a

4  hearing date from Ms. Capp.

5          MR. BUTZ:  Very good, Your Honor.

6          THE COURT:  All right, and submit the scheduling

7  order under certification of counsel if you will.

8          MR. BUTZ:  Thank you.

9          MR. SHAW:  Thank you, Your Honor.

10          MS. JONES:  Your Honor, Matter 11, PCT versus

11  Hannaman Chains USA, another party -- Your Honor, the parties

12  have agreed to a scheduling order with respect to that matter

13  which we submitted to the Court under certification of counsel

14  on July 21.  I don't know if Your Honor has any comments or

15  concerns about that scheduling order.

16          THE COURT:  I don't think I did, but let me look at

17  it again.  I don't think it was included.  Here it is.  All

18  right.  No, I have no problems with those dates, but I would

19  like to have a further pretrial after discovery is concluded.

20          MS. JONES:  Yes, Your Honor, I see that the

21  scheduling order does provide for that among the parties, but

22  they did not set a date on that, Your Honor.  Paragraph 7 is

23  where they reference a·final pretrial.

24          THE COURT:  Let me get Ms. Capp to fill in a date on

25  that.

1      MS. JONES:  Thank you, Your Honor.

2      Your Honor, Matter 12 is the pretrial with respect to

3 the adversary proceedings and I'm going to yield to Mr.

4 Hertzberg with respect to that.

5      MR. HERTZBERG:  Good afternoon, Your Honor, Robert

6 Hertzberg, Pepper, Hamilton.  This is the dates for the

7 pretrials on the listed adversary proceedings.  We have

8 received no objection to the proposed scheduling order.  It's

9 identical to the order that you executed on June 26th, and

10 we're going to ask the Court to enter that order in regard to

11 the defendants that have now answered.  There are several other

12 defendants that have still yet to answer and we were expecting

13 answers in the future.  What we would be doing is presenting to

14 the court orders of identical nature in regard to those

15 adversary proceedings.  Does the Court have any questions

16 regarding it?

17      THE COURT:  I did not.  Does any other party wish to

18 be heard on that?

19      All right, I will enter that, but did I not at the

20 prior ones set any pretrial dates of the first omnibus

21 hearings?

22      MR. HERTZBERG:  Yes, Your Honor.

23      THE COURT:  And then periodically after that.

24      All right.  I will enter that order then.

25      MR. HERTZBERG:  Thank you.

8

1        Your Honor, the next matter up is the Selby's Market

2   matter.  Once again, Robert Hertzberg on behalf of the PCT.

3   This is our motion to require Selby's Market to arbitrate the

4   claims that are pending.  This is almost identical to the

5   situation with the Adam Madison Foods case where the Court

6   ordered that the parties go and arbitrate the claims.  I really

7   don't see much difference between this and the Selby's

8   situation.  They both had provisions in the agreements that

9   require arbitration.  For example, the Selby's agreement

10  indicates this agreement to arbitrate shall survive the

11  recision or termination of this agreement.  We have a rejected

12  contract here and the Court has previously ruled in the Madison

13  Foods case that rejection does not terminate the requirement to

14  arbitrate.  They have claimed a waiver issue due to the fact

15  that we had entered into a stipulation in regard to the FSA and

16  the requirement of filing a proof of claim.  I think the case

17  law we cited in our brief is pretty clear that this is not a

18  waiver of the requirement of arbitration.  So the only two

19  differences really that you find between this and the Madison

20  Food situation is the language in the contracts and this one

21  being much stronger indicating that the survival of the

22  arbitration situation which is even stronger than you found in

23  the Madison Foods one and they are attempting to argue that

24  this does not relate to the agreement, the issues in it.  The

25  agreement is clear that it says any matter related to this

9

1  agreement, and we believe that the claims that are subject to

2  the litigation they brought are subject to the arbitration,

3  we'd ask that the Court direct that this be subject to

4  arbitration.

5          THE COURT:  Response?

6          MR. ROSENBLOOM:  Good afternoon, Your Honor, Neal

7  Rosenbloom, Finkel, Goldstein, Rosenbloom & Nash, we represent

8  Selby's Market.

9          First I would say to the Court that the facts in this

10 case are strikingly different than the facts in the Madison

11 Foods case.  The Madison Foods controversy, Judge, and I read

12 the decision very carefully, focuses as a result of a store

13 purchase.  At the time of the purchase, Judge, there was a full

14 set of documents which was signed consisting of an FSA, notes

15 and security agreement.  This is not the case in the Selby's

16 litigation, Judge, where the documents in question were

17 executed at different points in time.

18         On Page 4 of Your Honor's decision, Your Honor found

19 that the document in the Madison Foods case was an integrated

20 transaction and that the FSA specifically provided that all

21 disputes between the debtor and Madison including any matter

22 related to the agreement, be resolved by binding arbitration.

23 That is not what my FSA says, Judge.  The Selby's FSA is solely

24 related to the matters that are referred to within it.  This

25 transaction, Judge, is -- and that FSA, Judge, is Exhibit A --

1          THE COURT:  I have it, yes.

2          MR. ROSENBLOOM:  -- to our opposition.  The

3  transaction is not an integrated transaction and the language

4  in the FSA specifically limits itself to the matters within the

5  document, that being the debtor's agreement to supply Selby's

6  with 90 percent of its products needs or in effect, good sold

7  and delivered.  Now we also attach to our opposition papers,

8  Judge, a copy of Flemings most recent statement of account at

9  the time it ceased doing business with Selby's.  That statement

10  of account, Judge, reflects that there is $437,000 owed for

11  goods sold and delivered.  That's Exhibit G to our opposition

12  papers.  The arbitration demand which is attached as Exhibit D

13  to our motion papers, seeks to arbitrate $1.1 million of

14  claims.  The difference between the $400,000 and the 1.1

15  constitutes notes that Selby executed at a different point in

16  time when this FSA was executed and notes which this debtor

17  doesn't even own anymore, they were bought by C&S.  So the

18  facts, Judge, are dramatically different, dramatically in the

19  way that they arise and --

20          THE COURT:  Let me ask you this question.  If you're

21  correct and they no longer own the note, then your defense that

22  they are not the proper party in the arbitration will be

23  sustained and you'll only be arbitrating 400,000, am I wrong?

24          MR. ROSENBLOOM:  Well, they're taking the position,

25  Judge, that somehow magically this FSA requires that issues

1  other than goods sold and delivered be arbitrated.  And if in
2  fact Your Honor is going to direct that there be an
3  arbitration, I think there should be a ruling on the matters
4  which ought to be arbitrated and the matters which are not.

5          Continuing, Judge, the application itself is
6  procedurally deficient.  In effect what these motion papers
7  seek, is an injunction.  We have commenced an action post
8  petition in the State Court in Maryland, Selby's has through
9  outside counsel, for an injunction to enjoin this arbitration
10 in order to obtain an injunction from us.  That can only be
11 brought by way of an adversary proceeding, not a motion, that
12 is before the Court.

13         Then, Your Honor, as a matter of law, we raised two
14 points which I'd like to address with the Court, and one being
15 the idea of rejection.  The 3rd Circuit has long held,
16 beginning in the Schweiker case in 1984, and most recently in
17 the Cellnet case in 2003, and I'll quote from Page 249 of the
18 Cellnet decision.  "Rejection is an all or nothing proposition.
19 Either the whole contract is assumed or the whole contract is
20 rejected.  Rejection would end the obligations of the party and
21 the non-breaching party is relegated to filing an unsecured
22 claim."

23         Judge, by rejecting this agreement they are no longer
24 free to pick and choose what provisions within an agreement
25 they care to have effect -- remain in effect.

1        THE COURT:  Well, your quotation is taken out of
2   context.  365(g) -- it was not dealing with whether or not an
3   arbitration clause in a contract can be enforced after the
4   contract is terminated.  And the effect of rejection is stated
5   in the Code at 365(g), I think, which says it simply means
6   there's a breach of the contract as of immediately before the
7   petition date.

8        MR. ROSENBLOOM:  I think, Judge, that there is a
9   plethora of case law from the 3rd Circuit, from my 2nd Circuit
10  that stands for the proposition that once a contract is
11  rejected, and the effect of rejection is that it is rejected in
12  all parts, you cannot --

13       THE COURT:  It's rejected, but what does rejection
14  mean?  It does not mean terminate.  It means rejection of a
15  contract constitutes a breach of such contract.  And under
16  state law, a breach of a contract that contains an arbitration
17  clause, does not mean the arbitration clause disappears.

18       MR. ROSENBLOOM:  Judge, this is not governed, Judge,
19  by state law.  This is governed by federal law and it is our
20  position, Judge, that the cases under federal law hold that you
21  cannot pick and choose sections within a contract -- what
22  they're doing is they're saying, Judge, we think it's favorable
23  for us to arbitrate so we want to arbitrate.  I no longer have
24  the protection when they reject this contract of getting 90 pct
25  of my product being supplied, why should --

13

1          THE COURT:  No, but you have the right to insist on
2   arbitration and you have remedies for breach of contract.  The
3   contract has not disappeared.

4          MR. ROSENBLOOM:  Judge, the effect of the contract is
5   that the parties are relieved of their obligations thereunder.

6          THE COURT:  Not exactly.  The 3rd Circuit meant you
7   cannot assume part and reject part.  If you're going to assume
8   a contract, you get all of it.

9          MR. ROSENBLOOM:  And when you reject it, conversely,
10  you reject all of it.

11         THE COURT:  You cannot enforce it to the extent that
12  you couldn't enforce it if under state law a breach of contract
13  meant you could not enforce it.  Let me give you another
14  example.  If there were liquidated damages provision in that
15  contract, that does not disappear on breach of the contract.

16         MR. ROSENBLOOM:  Judge, if Congress saw fit to allow
17  an arbitration clause to proceed, notwithstanding the
18  rejection, then they would have drafted a provision within
19  Section 365 of the Bankruptcy Code to preserve rights of the
20  breaching party.

21         THE COURT:  Did they not in defining the effective
22  rejection, by simply providing that it meant it was a breach of
23  such contract as of the day before the bankruptcy?

24         MR. ROSENBLOOM:  No, Judge, I do not believe that
25  they did.  In fact, Congress specifically gave rights to

1 | different types of parties in different types of transactions
2 | when rejections take place. For example, Judge, in Section
3 | 365(n) Licensees of Intellectual Property have rights.  And
4 | that's what was discussed in the Cellnet case which was how the
5 | Cellnet came up.  That Cellnet case, Judge, was a rejection of
6 | intellectual property and talked about, and it was an expressed
7 | exception under Section 365.  365(h) -- rejected leases are
8 | given specific rights.  365(i) parties to contracts to buy real
9 | estate are given specific rights.  If Congress saw fit to give
10 | specific rights to parties in arbitration, they would have said
11 | so within the statute.  And Judge, we are extremely prejudice
12 | --

13 | THE COURT:  Do you have any case that says that a
14 | rejection of a contract means the arbitration clause is not
15 | enforceable?

16 | MR. ROSENBLOOM:  I do not have a specific clause
17 | where that -- I do not have a specific case where that issue
18 | has been addressed.  However, Judge, however, I want to talk
19 | just for a moment, and it comes within the argument of waiver
20 | of the prejudice that my client faces as a result of
21 | arbitrating.  (a) I lose my right to a jury trial.  (b) I lose
22 | my right to complete discovery.  (c) I lose my right -- excuse
23 | me, I find myself obligated to pay attorney's fees to the
24 | debtor in the arbitration.  These are three fundamental
25 | concepts of our judicial system that my client loses in this

1 arbitration.

2       THE COURT:   Your client didn't lose it because of the
3 rejection of that contract.  Your client lost it when it signed
4 the contract that provided for arbitration.  That was a
5 bargained for provision.  And quite frankly, arbitration only
6 arises when somebody allegedly breaches the contract.  So it
7 must survive breach of the contract.

8       MR. ROSENBLOOM:   Judge, again, I step back and I
9 repeat my argument that it does not survive because nothing
10 survives other than that which Congress specifically says
11 survives, and they do not say that arbitration survives and --

12       THE COURT:   It does say that a rejection is a breach
13 of contract, and that's all it is.  It doesn't say it
14 eliminates.  Where in the Bankruptcy Code does it say that when
15 you reject a contract the debtor cannot use any -- or enforce
16 any of the provisions of the contract.  It does not say it in
17 the Code.

18       MR. ROSENBLOOM:   The 3rd Circuit in _Cellnet_ said that
19 rejection ends the obligations of the parties.

20       THE COURT:   Well, you're taking it out of context.
21 It was not dealing with the enforceability of an arbitration
22 provision after rejection.

23       MR. ROSENBLOOM:   _Lee v. Schweiker_, Judge, the other
24 3rd Circuit case going back, your Court of Appeals, 1984,
25 specifically says at Page 876, "that you may not assume

1  favorable aspects of an executory contract and reject on
2  favorable.  By allowing the debtor to arbitrate, Judge, you are
3  tantamount allowing the debtor to enforce and assume what it
4  believes it the favorable right under the contract.  And Judge,
5  let me also say that I am not taking away any rights of this
6  debtor.  This debtor has a perfect right through its PCT funded
7  by millions of dollars of creditor's money to start a plenary
8  action against my client.  These FSA --

9           THE COURT:  You are taking away rights.  You're
10  taking away the right to arbitration.

11          MR. ROSENBLOOM:  Judge, that right is taken away as a
12  result of the debtor's protections and rejecting a contract.

13          THE COURT:  But a rejection is just a breach.  It's
14  nothing more.  Notwithstanding the quotes you have, it is
15  nothing more than a breach of the contract as of a time
16  immediately before the bankruptcy.  I don't see it being any
17  different.

18          MR. ROSENBLOOM:  Judge, I think that the effect of
19  rejecting the contract is that the parties are relieved of
20  their obligations under that contract.

21          THE COURT:  Well, that quote is out of context and it
22  does not eliminate the obligation to go to arbitration.

23          MR. ROSENBLOOM:  I don't believe that it's out of
24  context because it is a general statement of the law within the
25  Cellnet case before that Court talks about the exception that

1  is carved out for intellectual property in Section 363(n).

2          THE COURT:  Well, then it's dicta.  It's not

3  addressing this issue, it's not addressing all rights of an

4  every possible provision of a contract.

5          MR. ROSENBLOOM:  Judge, I think that I have made my

6  point.  I have been a student of bankruptcy law for twenty-some

7  odd years, I've read many of Your Honor's decisions, I've had

8  numerous matters before Your Honor within the context of this

9  case.

10          THE COURT:  I wish you could find me a case that says

11  one way or the other on arbitration provisions, but --

12          MR. ROSENBLOOM:  It just seems to me, Judge, and you

13  know, it is just so abundantly clear to me as a student of law

14  that it is just -- it's wrong as a matter of equity, I think

15  that it is wrong as a matter of law and I don't think that it's

16  what the Circuit here holds in these two cases.

17          THE COURT:  Well, let me turn it around.  You're

18  saying the debtor's rejection of the contract eliminates the

19  party's obligations under the contract.  Were you to be seeking

20  arbitration under this provision of the contract would that

21  have been eliminated by the debtor's rejection of the contract?

22          MR. ROSENBLOOM:  Absolutely.

23          THE COURT:  The debtor would have no duty to

24  arbitrate?

25          MR. ROSENBLOOM:  Absolutely none.

1          THE COURT:  Why not?

2          MR. ROSENBLOOM:  Aside from the debtor being

3  protected by the provisions of the automatic stay --

4          THE COURT:  Well, ignoring the automatic stay.

5          MR. ROSENBLOOM:  How can I ignore the automatic stay?

6          THE COURT:  -- from the stay, would it eliminate the

7  debtor's obligation to arbitrate this provision?

8          MR. ROSENBLOOM:  If this contract were not rejected

9  --

10          THE COURT:  Let's assume it's rejected.

11          MR. ROSENBLOOM:  It is rejected.  And there is no

12  longer an automatic stay.

13          THE COURT:  Correct.

14          MR. ROSENBLOOM:  I cannot commence an arbitration

15  proceeding.

16          THE COURT:  And you probably could not commence any

17  action because to take your argument to its fullest, it

18  eliminates any obligations of the debtor under the contract.

19  The debtor has no obligation to pay you damages for the breach.

20          MR. ROSENBLOOM:  No, excuse me.  I think what the

21  Court of Appeals -- no, no, no, no, let me respond, Judge.

22          THE COURT:  Okay.

23          MR. ROSENBLOOM:  What the Court of Appeals says is

24  that my obligation is to file a claim.  That's what my

25  obligation is.  That's how I would vindicate my rights as

1 against the debtor.

2        THE COURT:  Yes, but it says that all obligations of
3 the parties are relieved.  Taken out of context --

4        MR. ROSENBLOOM:  I don't see it that way, Judge.
5 In your scenario that you gave to me, I would have no right to
6 commence an arbitration against the debtor, and my rights would
7 be relegated to filing a claim with the Court.  Those are what
8 my rights would be.

9        THE COURT:  Well, I think that's the danger of taking
10 quotes out of context.

11        MR. ROSENBLOOM:  I'm sorry, Judge, that is the danger
12 of what?

13        THE COURT:  Taking quotes out of context.

14        MR. ROSENBLOOM:  I just -- again, I just don't see it
15 as being out of context.  I think that it is the core of what
16 happens when somebody rejects a contract under Section 365.  I
17 don't think that it's out of context at all.  I think that it
18 is a fundamental holding in Cellnet, I think that it is a
19 fundamental holding in Schweiker.

20        THE COURT:  All right.  Well, let me hear from PCT on
21 the issue of whether or not the notes are part of the
22 arbitration.

23        MR. HERTZBERG:  It was the intent of the parties that
24 all documents are integrated.

25        THE COURT:  Where's that expressed?

1           MR. HERTZBERG:  It's not expressed, but --

2           THE COURT:  How can I come to that conclusion then?

3           MR. HERTZBERG:  Because everything relates back to

4   the FSA agreement.  Any disputes among the parties related to

5   the supply agreement and the notes are part of the supply

6   agreement.  They might have been executed six months later in

7   1996.

8           THE COURT:  How are they part of the FSA then?

9           MR. HERTZBERG:  Because it's one integrated agreement

10  between the parties, the FSA, the notes were later executed

11  when they went in and needed funds from Fleming.

12          THE COURT:  Well, what proofs do I have if they're

13  integrated?

14          MR. HERTZBERG:  You don't have any proof of it, but

15  it's an issue to be determined by the arbitrator and not by

16  this Court.  The claims have not been specified, the

17  arbitration is not proceeding right now.  Once the arbitration

18  proceeds, in the event that they believe that this part, i.e.,

19  the notes should not be part of the arbitration, the

20  arbitrators will make a decision whether it's contained within

21  the arbitration provision.  If they decide that it isn't, then

22  it comes back to this Court.

23          THE COURT:  Well, do you have any right to pursue the

24  notes?

25          MR. HERTZBERG:  Yes, we have rights to pursue them.

1            THE COURT:  How?

2            MR. HERTZBERG:  Under the C&S we retain, and I don't

3    have that information with me, but I remember on this one that

4    there was a retention of part of the amounts owed under the

5    notes when they were sold off to C&S.

6            THE COURT:  Well, again, what evidence do I have of

7    that?

8            MR. HERTZBERG:  I can provide an affidavit of that to

9    the Court later.  I didn't realize that that was going to be an

10    issue as to whether we held any rights under the notes, but I

11    can submit an affidavit to the effect that what rights we have,

12    if any, on the notes if the Court wants to hold a decision on

13    that issue.

14            THE COURT:  Well, looking at the FSA, Paragraph 16(d)

15    specifically says that this agreement advise the entire

16    understanding of the parties here to a relationship, to the

17    persons and products, et cetera.  So how can it be integrated

18    with a document later signed?

19            MR. HERTZBERG:  Because there's going to be offsets

20    claim by each party.  They're claiming damages of over a

21    million dollars caused by the breach of the supply agreement by

22    Fleming.  There's going to be an offset rights back and forth

23    between the parties, they might have to be offset against part

24    of the notes.  That's why it's up to the arbitrator.

25            THE COURT:  Well, it may be, but how is the issue of

1 the note subject to arbitration?  The notes have no arbitration
2 clause.

3        MR. HERTZBERG:  Because let's say hypothetically, for
4 example, Your Honor, if they are correct that they're entitled
5 to $1 million in damages, and Fleming is entitled to $500,000
6 on its receivable, plus it's entitled to a $1 million on its
7 notes, where is the arbitrators going to offset against if it
8 doesn't take the notes into consideration?

9        THE COURT:  It doesn't.  It issues a judgment on that
10 issue, and then if you have any other rights you pursue those
11 in a court of law.

12        MR. HERTZBERG:  But isn't it up to the arbitrators to
13 decide what is contained and subject to the arbitration?

14        THE COURT:  I think in the first instance since the
15 issue has been put before me, don't I decide?

16        MR. HERTZBERG:  No, I believe it goes to the
17 arbitration.  The parties agreed to arbitrate.  I believe
18 everything goes to the arbitrators and then the arbitrators
19 sift through and decide what is subject to the arbitration --

20        THE COURT:  Well, that would be fine but you filed a
21 motion to compel arbitration.  So don't I have to decide what
22 needs to be arbitrated?

23        MR. HERTZBERG:  No, I think the Court throws
24 everything to the arbitration because there is an arbitration
25 clause in the FSA and if there's part that we bring before the

1  arbitrators that they believe is not contained within the
2  arbitration provision of the FSA, they will decide whether they
3  will hear it or not.  I don't believe the Court conducts, for
4  example, mini evidentiary trial and every motion to compel
5  arbitration, to decide does X, Y and Z go to arbitration and A
6  and B stay with the Court.  What the Court does is, they send
7  everything to the arbitration panel, the arbitrators then look
8  at it and they decide what their jurisdiction is to hear the
9  issues.  It's not the obligation of this Court to separate
10 different causes of action and different claims among the
11 parties when there is an arbitration provision in a master FSA
12 agreement.

13        THE COURT:  I disagree.  I have to decide what issues
14 are subject to the arbitration clause in order to order the
15 parties to arbitration.

16        MR. HERTZBERG:  I don't think so.  They brought a
17 lawsuit against Fleming.

18        THE COURT:  You didn't have to file this motion.  You
19 could have raised these issues in response to their lawsuit.

20        MR. HERTZBERG:  No, but they filed a lawsuit against
21 Fleming.

22        THE COURT:  Yes.

23        MR. HERTZBERG:  We then, pursuant to the arbitration
24 provision, came back to this Court. We had a rejected contract.
25 I'm not going to argue whether it was terminated or not.  I