24

1  heard the Court loud and clear on the issue that the rejection
2  does not void the arbitration clause out.  We filed a motion to
3  compel them to take their issues to arbitration.
4           THE COURT:  Okay.
5           MR. HERTZBERG:  And not go with the lawsuit in state
6  court.
7           THE COURT:  But to grant your motion I have to decide
8  whether any issues are subject to the arbitration clause.
9           MR. HERTZBERG:  I don't believe so.  Is the Court
10 saying, for example, that it has to go through if it's a 50
11 count -- or not count -- 50 paragraph complaint that the Court
12 has to search through each paragraph of the complaint and say
13 Paragraphs 1 through 3 go to arbitration, 4 and 5 don't, 6 and
14 7 do, 9 and 10 don't, and on and on.  No.  They filed the
15 lawsuit, we have asked the Court to stop that lawsuit and throw
16 them into arbitration where they agreed to go pursuant to the
17 arbitration clause.  Now, if the arbitrators get it and they
18 decide that they look at the complaint, the claims brought by
19 Selby and they look at the claims brought by the PCT and say,
20 okay, we believe that 90 percent of these claims we're going to
21 handle, but 10 percent of them don't belong here, you go back
22 to state court/bankruptcy court and have those decided by the
23 Court.  It's not the obligation of this Court to walk through
24 every little complaint or every paragraph in their complaint
25 and decide you can take Paragraph 1 through 10 to arbitration,

1  12 through 14 stayed here, 15 through 18 go there and on and on
2  and on.
3       THE COURT:  No, but I can make a determination that
4  there's nothing in the notes that compels arbitration.  So any
5  dispute over the notes --
6       MR. HERTZBERG:  But the notes aren't before the
7  Court.  What we've asked the Court to do is stop in its tracks,
8  the litigation in the state court and order arbitration.  We
9  haven't asked the Court to make a ruling as to what is subject
10 to the arbitration, we've asked --
11      THE COURT:  Let's talk about whether or not
12 procedurally you can get that relief by the filing of a motion.
13 You're asking for an injunction?  Why doesn't 7001 --
14      MR. HERTZBERG:  We're not asking for an injunction.
15 We have a rejected contract --
16      THE COURT:  What are you asking for?
17      MR. HERTZBERG:  We're asking the Court to uphold a
18 provision in a rejected contract that requires arbitration.
19 We're enforcing a rejected contract provision.  This is not an
20 injunction.  We don't have to prove the four steps of an
21 injunction to prevent this lawsuit.  What we are saying is we
22 were before this Court previously, we had rejected this
23 contract, the contract survives -- the arbitration provision
24 survives the rejection of the contract, therefore, order the
25 parties to go to arbitration.

1       THE COURT:  Well, I don't have your proposed order
2  attached to your motion.  What does your order seek?
3       MR. HERTZBERG:  Let me see, Your Honor.
4                    (Pause)
5       MR. HERTZBERG:  Your Honor, unfortunately, I do not
6  have a copy of the order.
7       THE COURT:  Does anybody?
8       MR. ROSENBLOOM:  No, Judge, I don't think that a copy
9  of an order was attached to the motion.  I don't recall seeing
10 it.
11      THE COURT:  Well, in the introductory paragraph the
12 motion, it seems you're seeking an order one, compelling
13 arbitration, and two, staying the action filed in Maryland
14 State Court.  Isn't that an injunction?
15      MR. HERTZBERG:  No, I don't characterize that as a
16 injunction, Your Honor, I characterize it as the Court
17 enforcing the arbitration provision.
18      THE COURT:  By entering an injunction.
19      MR. HERTZBERG:  Pardon me?
20      THE COURT:  By entering an injunction.
21      MR. HERTZBERG:  No, I don't believe --
22      THE COURT:  Or declaratory judgment.
23      MR. HERTZBERG:  I guess it would be a declaratory
24 judgment, but it wouldn't be an injunction, it would be the
25 Court finding that there was an arbitration provision in a

1  rejected contract and ordering that the parties proceed to
2  arbitration as provided in the contract. Not an injunction. I
3  guess you're right, it's better characterized as a declaratory
4  judgment.
5         THE COURT: Well, that also needs an adversary,
6  doesn't it, under Rule 7001?
7         MR. HERTZBERG: One second, Your Honor, I'm looking
8  at one thing.
9                     (Pause)
10        MR. HERTZBERG: I don't know the answer to that
11 question whether we need to. If the Court would like, we can
12 go through the steps of bringing a complaint to compel
13 arbitration and then to ask for a declaratory relief. I don't
14 believe it's a necessary step, but the Court believes that it's
15 got to be done by adversary we'll do it that way.
16        THE COURT: Well, why don't you simply seek the
17 relief from the Maryland State Court?
18        MR. HERTZBERG: Because we believe the appropriate
19 place to seek it is the bankruptcy court. The contract was
20 rejected, this Court entered an order rejecting the contract.
21 Now if there's any issue related to the contract itself, this
22 is the proper jurisdiction to come before the Court. Not the
23 Maryland Court, I believe this Court would rule because it's
24 the one who rejected -- or authorized the rejection of the
25 contract, not Maryland Court. So it's up to this Court to

1  decide whether provisions such as the arbitration clause
2  survive the rejection, not a state court, but the federal
3  bankruptcy court.
4          THE COURT: Is it up to me to decide all issues
5  regarding them breach of the contract then?
6          MR. HERTZBERG: No. Just whether the arbitration
7  provision is in effect and if it has to be done by adversary
8  and get a declaratory ruling out of the Court, then it's up to
9  the Court to simply decide whether the arbitration provision is
10 in effect then the matter should be shipped off to federal
11 arbitration panel for handling. Not to go through and go line
12 by line through facts and determine which might fit within the
13 interpretation of the arbitration clause.
14         THE COURT: I don't see how you can get the relief
15 you're requesting without me determining what is subject to
16 arbitration.
17         MR. HERTZBERG: Any disputes between the parties.
18         THE COURT: But that's not what the arbitration
19 clause says.
20         MR. HERTZBERG: Then the arbitrators will kick it
21 back. This Court doesn't have to act as the trier of the fact
22 in the first instance to decide whether this claim fits in this
23 square pack or in the other one and therefore is subject to the
24 arbitration.
25         THE COURT: You can't have it both ways. You can't

29

1  have me deciding it's subject to arbitration but not deciding
2  what is subject to arbitration. You just can't do that.
3         MR. HERTZBERG: What we're asking the Court to do is
4  allow us to arbitrate the issues brought by Selby Market in
5  state court --
6         THE COURT: Well, you're asking me to decide that all
7  the issues they brought are subject to the arbitration clause.
8         MR. HERTZBERG: No, I'm asking you to order
9  arbitration on the rejected FSA. I will then ask the
10 arbitrators to handle all the issues and I'm sure counsel will
11 then argue before the arbitrators that these provisions, i.e.,
12 the notes, are not subject to arbitration, and if the
13 arbitrators rule, that it's not subject to arbitration, then we
14 end up back before this Court on those issues.
15        THE COURT: Why before me? Why not the Maryland
16 State Court where they're seeking to --
17        MR. HERTZBERG: Might be before the Maryland State
18 Court, might be dealt with under the proof of claim. I don't
19 know what procedure it'll be dealt with. But I know that this
20 Court is not required to pick and choose through the different
21 paragraphs of the complaint on what is subject to arbitration.
22 There's a dispute between the parties. The FSA says that it
23 should be subject to arbitration, the Court can order the
24 arbitration either through the motion process or if it wants,
25 through a contested matter with a declaratory relief and order

1  the parties the arbitration.  The arbitrators will decide, as
2  in any arbitration, what provisions are subject to arbitration.
3  I've never seen either a state court or a federal court order
4  through different paragraphs of a complaint what should go to
5  arbitration and what shouldn't.  The courts I have seen on
6  arbitrations have ordered arbitrations and then the arbitrators
7  themselves decide what they will hear.
8              THE COURT:  But have you ever seen any cases where
9  the Court orders arbitration where there's only an arbitration
10 clause in one contract and orders arbitration of any and all
11 possible issues between the parties whether related to that
12 contract or not?
13             MR. HERTZBERG:  No, what will happen in effect, Your
14 Honor, is their complaint will be -- the same exact complaint
15 will be moved over to the arbitration.  We will then respond on
16 the arbitration that we have claims on goods shipped and we
17 have claims on notes.  The arbitrators will then decide whether
18 they'll hear everything or whether they'll only hear the issues
19 related to the goods shipped and that the notes will not be
20 heard by them.  That's how the process will shake out.
21             THE COURT:  Well, why -- I'm still struggling to find
22 out why you're here.  They filed an injunction -- you sought
23 arbitration on whatever you think is arbitrable.  They sought
24 an injunction of that.
25             MR. HERTZBERG:  Then I believe the Court still has

31

1  jurisdiction over issues contained within the rejected FSA.
2       THE COURT: Maybe I do, but why should I exercise
3  jurisdiction over it. It's already been before two tribunals.
4  You say the arbitrators are going to decide what is subject to
5  arbitration. He says Maryland State Court should enjoin some
6  or all of it.
7       MR. HERTZBERG: Because it's this Court's obligation,
8  I believe, to decide whether the arbitration clause survives,
9  and if so, to enforce it. Not to go --
10      THE COURT: It doesn't need to be enforced. You
11 already brought it. You already brought your arbitration
12 action. What needs to be enforced?
13      MR. HERTZBERG: It needs to be enforced so they can't
14 proceed in state court, the arbitration --
15      THE COURT: Why not?
16      MR. HERTZBERG: Because they are arguing that the
17 arbitration provision did not survive. This Court --
18      THE COURT: Yes, they are arguing that and some court
19 will decide it, why does it have to be me? They brought it
20 before a tribunal that presumably has jurisdiction --
21      MR. HERTZBERG: And the response of the Court why did
22 the Court decide the Madison Foods one, whether the arbitration
23 survived them?
24      THE COURT: I don't think there was a similar
25 injunction action brought in that.

.

1      MR. HERTZBERG:  I don't know if there was --

2      THE COURT:  The parties brought it before me and I
3 decided what was before me.  But I don't think it was already
4 pending before anybody else.

5      MR. HERTZBERG:  But if you had jurisdiction, even if
6 there isn't a lawsuit pending, if you have jurisdiction over an
7 arbitration clause, whether -- if there's not a lawsuit pending
8 on a rejected FSA, I would assume that the Court has
9 jurisdiction over rejected FSA even if there is a state court
10 action.

11      THE COURT:  This is not a jurisdiction issue, this is
12 a question of abstention.  Why should three courts or three
13 tribunals weight in on what is arbitrable?

14      MR. HERTZBERG:  Then I suggest that the Court is not
15 going to exercise jurisdiction and abstain, that the Court
16 should enter an order indicating that the arbitration clause
17 was not terminated/rejected as part of the rejection of the FSA
18 agreement, so it's clear what this Court's position is on those
19 contracts because it is governed by bankruptcy law.  Not by
20 state court or arbitration or under the Federal Arbitration
21 Act, but it is a matter of bankruptcy law as to whether the
22 arbitration clause is still in effect.  So at least this Court
23 should rule that it finds that the rejected FSA did not
24 terminate the parties' duty to arbitrate.

25      THE COURT:  But you're seeking a clarification of my

1  rejection order in effect?
2        MR. HERTZBERG:  I'll take whatever the Court is
3  willing to give today.
4        THE COURT:  All right.
5        MR. ROSENBLOOM:  Everything that has come before Your
6  Honor as -- by the debtor has come across backwards and putting
7  a round screw into a square peg.  I don't see how they can say
8  that they're not seeking a stay when right on the face of the
9  notice of motion it requests a stay of certain state court
10 proceedings.  We proceeded properly.  This -- when I say
11 everything about this proceeded irregularly, this contract
12 should have been rejected long before it was and it slipped
13 through the cracks and wasn't rejected.  We got that corrected.
14 They commenced an arbitration proceeding after the rejection
15 was effective.  We commenced an action in the Maryland Court
16 properly under Maryland jurisdiction to stay the arbitration
17 and for declaratory relief in that action.  We don't ask for
18 any type of monetary relief, we ask for declaratory judgment.
19 And the Maryland Court is perfectly competent to issue
20 declaratory judgment.  They then come into this Court, bring on
21 a request for a stay, which is wrong, by way of a motion, and
22 they ask the Court for an advisory opinion which also would be
23 wrong because that's not what's before this Court.  So I think
24 that it would be perfectly appropriate --
25       THE COURT:  Well, it isn't an advisory opinion

1 because issue has been joined.
2     MR. ROSENBLOOM: Issue has been joined.
3     THE COURT: They say it's arbitrable and you say it
4 isn't. It's not something that may happen in the future.
5     MR. ROSENBLOOM: Then, Judge, what then is left for
6 the Maryland Court to decide? That is a court that is
7 perfectly capable of issuing the determination as to what
8 rejection means.
9     THE COURT: Well, to be decided by either the
10 Maryland Court or the arbitrator as what exactly is covered by
11 the arbitration clause.
12     MR. ROSENBLOOM: Another issue. That's another
13 issue. And I think that Your Honor is perfectly correct. If
14 it's going to stay here, I think it is perfectly appropriate
15 for Your Honor to decide what is arbitrable and it's not akin
16 to looking at a 50 count complaint, it's akin to looking at a
17 three page agreement that says only matters -- that this
18 relates only to -- I'm sorry, I just want to get my notes --
19 that it relates only to the matters that are within the FSA and
20 which is a completely different type of clause than that which
21 was contained in the Madison Food FSA, which incorporated all
22 other kinds of things. This just limits itself to the FSA, and
23 in no way references notes, references anything else, and
24 specifically, Judge, has an integration clause. So I think
25 that it would be thoroughly appropriate for Your Honor to

abstain from exercising jurisdiction here. If Your Honor wants to proceed with this, I think that the correct way to proceed is by way of an adversary proceeding whether this is for an injunction or whether it's for declaratory judgment. And of course, we reserve all of our rights and comments concerning the issues that we would ask the state court to decide in that declaratory judgment. It's all teed up there. Fleming has appeared by counsel. And in respect for this Court's jurisdiction, we have taken a step back, but it's all teed up there. They're represented by counsel, we're represented by counsel and that Maryland Court is perfectly capable of deciding the issues before it as it properly should.

   MR. HERTZBERG: Your Honor, one last thing. I think the Court has authority to make a ruling on this matter. It is clear, at least to the PCT, that the only purpose of the continual fighting by Selby Market is to avoid payment and they are trying to give the PCT a runaround.

   THE COURT: No, they're seeking to enforce rights they think they have.

   MR. HERTZBERG: No, Your Honor, they're seeking to avoid payment is what the reality is.

   THE COURT: Well, that's true, anybody who answers a complaint is seeking to avoid payment.

   MR. HERTZBERG: Well, there's motives because there's real disputes and sometimes there's not real disputes and

36

1  they're delaying payment. But I believe the Court has the
2  ability to make a decision today based upon the pleadings that
3  the arbitration clause survives the rejection of the contract.
4        THE COURT: The same issue that is currently pending
5  before the Maryland Court.
6        MR. HERTZBERG: But this is a contract that was
7  rejected by this Court's order. So this Court can interpret
8  what its order says and what its order means. And this Court
9  has authority to rule that it signed an order rejecting the
10 contract but that it did not terminate the arbitration
11 provision within the contract.
12        THE COURT: Well, let me issue my ruling. I do think
13 that for a limited purpose I do have jurisdiction and should
14 act. I think having entered the order rejecting or approving
15 the rejection of the FSA, I have jurisdiction and am in a
16 position to interpret the effect of that order. It is an issue
17 that relates solely to bankruptcy law, it is not a state law
18 issue, although it has been raised by Selby's in its state
19 court action, I think that the fact that it is a bankruptcy
20 issue is preeminent, and I'm capable of addressing that issue.
21 I will not decide what in the arbitration demand is subject to
22 the arbitration clause, nor even decide that the Maryland issue
23 -- Maryland complaint is moot. But I think it's clear that the
24 rejection of the FSA under bankruptcy law means only what
25 Section 365(g) says it means and that is that it constitutes a

1  breach of such contract or lease as of the time immediately
2  before the date of the petition.  So it constitutes a
3  prepetition breach of the contract.  But I will also state that
4  the arbitration provision applies solely to the FSA which is
5  the contract that has that provision.  It won't enjoin anything
6  but I will make that ruling.
7       Somebody want to get me a form of order?
8       MR. HERTZBERG:  Yes, we'll get you a form of order,
9  Your Honor.
10      MR. ROSENBLOOM:  Your Honor, if I may just -- I
11 understand Your Honor's ruling clearly.
12      THE COURT:  You have to speak into the microphone,
13 either remain seated and speak into that or speak at the
14 podium.
15      MR. ROSENBLOOM:  Judge, of course in looking at
16 365(g), I think that, yes, it does refer to a prepetition
17 breach and I think that the purpose of that statute, Judge, is
18 to relate claims for damages so that they are prepetition
19 claims to damages rather than post petition.  It is a
20 protective provision, Judge, for a debtor, so that it does not
21 incur post petition claims as a result of the rejection of a
22 prepetition contract.  And I would ask Your Honor to think of
23 that, you know, as part of Your Honor's ruling.  I just -- I
24 come back to my citations, to the Cellnet case and to the
25 Schweiker case, and I think that this is a debtor protective

provision so that the debtor does not incur post petition claims as a result of a prepetition contract being rejected where there is still performance ongoing post petition.

THE COURT: Well, if that's what Congress meant it could have said that, it could have said any claim for rejection is merely a prepetition claim. It went further. It said, rejection shall constitute a breach of the contract. And I think that quite frankly there are distinctions between termination and breach under state law that Congress was cognizant of that it was also seeking to make clear that for example, in perfection of landlord rights. This wasn't a termination, this is just a breach.

MR. ROSENBLOOM: Understood. And that is one of the provisions that I refer to Your Honor in my argument. And the items that Congress saw fit to preserve and save are delineated within the statute. And if Congress thought that there was a federal purpose to be served by allowing arbitrations to proceed post rejection, it could have provided for that somewhere in else in 365 as it did for landlords, as it did for licensees of intellectual property, as it did for timeshares and --

THE COURT: Maybe it need not -- felt it need not do that because there is a general policy favoring arbitration.

MR. ROSENBLOOM: I understand that general policy, I respect that general policy, but I also think that there is

...

cause and effect with rejection of contracts. And I think that once a contract is rejected, it's rejected for all purposes. And the provision that Your Honor cited to in Section 365(g), I believe is debtor protective to insure that a debtor is not responsible for a post-petition claim rejecting a prepetition contract.

THE COURT: I understand your argument, but I think you're incorrect so I've made my ruling and we'll see what happens.

MR. ROSENBLOOM: Thank you so much.

THE COURT: Thank you.

MR. CARRIGAN: Good afternoon, Your Honor, James Carrigan of Pepper Hamilton appearing today on behalf of the post confirmation trust in this case.

If I may direct Your Honor's attention to Agenda Item Number 14, you will see the PCT's 33rd omnibus substantive objection to claims. Pursuant to this objection, Your Honor, PCT seeks to expunge and disallow or reclassify several of the administrative claims that have been asserted against the debtors. We serve this objection on all of the administrative claimants to be affected by the objection, only eleven responses to the objection were filed. Of these eleven responses we have agreed with the claimants with respect to eight of the responses and we seek your permission today to adjourn the hearing with respect to the claims objection to the

40

1  omnibus hearing to be held on August 29th at 9:30 a.m.  And if
2  I might, I could just list he claimants for which we seek
3  adjournments.
4          THE COURT:  You may.
5          MR. CARRIGAN:  Those are Flam, Boras and Basie
6  indicated as sub-heading (b) under Item Number 14.
7          THE COURT:  Well, just give me the letters, you don't
8  have to go through them all.
9          MR. CARRIGAN:  Okay.  Those are b, d, f, g, h, i,
10 which is actually not listed as adjourned on the agenda, j and
11 k.
12         MR. CARRIGAN:  That leaves three responding claimants
13 for which we seek to go forward today, and needless to say --
14 we would also seek to go forward with respect to the claimants
15 that filed claims to which we objected but who did not respond.
16         THE COURT:  Do you have a witness?
17         MR. CARRIGAN:  I do not have a witness.
18         THE COURT:  Well, no declaration was filed in support
19 of the objection, was it?
20         MR. CARRIGAN:  It was, Your Honor.  The declaration
21 of John Franks was filed.
22         THE COURT:  Where's that?
23         MR. CARRIGAN:  I should have said affidavit of John
24 Franks.  May I approach, Your Honor?
25         THE COURT:  You may.

```
                                                                    41
 1                          (Pause)
 2          THE COURT:  Well, let me say this, with respect to
 3  the affidavit, I think it's deficient, I think you need a
 4  witness.  It's not sufficient to say that the debtor's books
 5  and records contain no record of amounts due particularly with
 6  respect to claims that have documentation attached to support
 7  their claim.
 8          MR. CARRIGAN:  Now does that also apply to the non-
 9  responsive claimants?
10          THE COURT:  Yes.
11          MR. CARRIGAN:  Okay.  Well, I will take direction
12  from Your Honor, but it the facts that have been asserted are
13  of the record are not sufficient to support entry of an order
14  --
15          THE COURT:  They're not.
16          MR. CARRIGAN:  Perhaps -- I'd request that we adjourn
17  the entire objection until the next hearing.
18          THE COURT:  All right.  You can either file a more
19  comprehensive declaration that explains why no liabilities due,
20  not withstanding the documents attached to the proof of claim,
21  or bring a witness to testify to that.
22          MR. CARRIGAN:  Thank you, Your Honor.
23          MS. JONES:  Your Honor, that brings us to the section
24  of the agenda with respect to the assumptions and assignments,
25  matters 15 through 24.  Your Honor, we've designated all of
```

1  those as being continued to the August 29 hearing. I yield to
2  any counsel that has any comments with respect to any of those.
3           THE COURT: Anybody disagree with that?
4           All right.
5           MS. JONES: Your Honor, I had one other housekeeping
6  matter and I address the Court with some hesitancy on this
7  issue, but Your Honor, there is a stipulation, a resolution of
8  the fees with respect to my firm that is pending before the
9  Court and I do ask if there is anything that we could provide
10 to the Court or anything the Court needs with respect to that.
11          THE COURT: No, and I'm sorry you're on the list with
12 30 other matters unfortunately.
13          MS. JONES: Okay.
14          THE COURT: But I will see what I can do.
15          MS. JONES: I appreciate that, Your Honor.
16          I think that's everything we have on the agenda.
17          THE COURT: All right, we'll stand adjourned.
18          MS. JONES: Thank you, Your Honor.
19
20                       * * * * * *
21
22
23
24
25

43

# CERTIFICATION

I, Johanna LiMato, court approved transcriber, certify that the foregoing is a correct transcript to the best of my ability from the official electronic sound recording of the proceedings in the above-entitled matter.

*[signature]*

J&J COURT TRANSCRIBERS, INC.

Dated:   September 8, 2005