IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: Fleming Companies, Inc. et al | : |
| | : |
| Selby's Market Inc. | : |
|         Appellant | :    Civil Action No. 05-749 |
|         v. | : |
| PCT | : |
|         Appellee | :    Bankruptcy Case No. 03-10945 |

## OPENING BRIEF OF APPELLANT

Laurie S. Polleck (#4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

- and -

Neal M. Rosenbloom, Esquire
Sarit R. Shmulevitz, Esquire
FINKEL GOLDSTEIN
ROSENBLOOM & NASH, LLP
26 Broadway, Suite 711
New York, NY 10004
Telephone: (212) 344-2929
Facsimile: (212) 422-6836

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUE PRESENTED .................................................................1

STATEMENT OF FACTS ......................................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT ...........................................................................................................2

    A.    It is Black Letter Law That a Rejected Executory Contract is Rejected in its Entirety ................................................................2

    B.    The Rights and Obligations of Rejection Extend Beyond the Confines Of Section 365(g) ...........................................................7

    C.    State Law is Inapplicable and Irrelevant ..............................................9

    D.    The Wording of Section 365 Supports a Determination that Arbitration Clauses Do Not Survive Rejection........................10

    E.    The Reasoning in *Madison Foods* is Equally Unavailing............12

CONCLUSION ......................................................................................................14

# Table of Authorities

## Cases

Page

In re Allain,
    59 B.R. 107 (Bankr.W.D.La. 1986) ................................................3,6,8

In re Atlantic Computer Systems, Inc.,
    173 B.R. 844, 849 (S.D.N.Y. 1994) ...............................................3,5,8

In re Audra-John Corp.,
    140 B.R. 752 (Bkrptc.D.Minn. 1992) ................................................3,6

In re Cellnet Data Systems, Inc.,
    327 F.3d 242 (3rd Cir. 2003) ...............................................................4

City of Covington v. Covington Landing Ltd. P'Ship,
    71 F.3d 1221 (6th Cir. 1995) ................................................................2

In re David Own Case,
    91 B.R. 102, (Bankr.D.Col. 1988)........................................................3,8

In re Gardinier, Inc.,
    831 F.2d 974 (11th Cir. 1987)
    cert. denied, 488 U.S. 853, 109 S.Ct. 140 (1988) ...............................9

In re Italian Cook Oil Corp.,
    190 F.2d 994 (3rd Cir. 1951) ................................................................4

Lee v. S. Schweiker,
    739 F.2d 870 (3rd Cir. 1984) ................................................................4

Madison Foods v. Fleming Companies (In re Fleming)
    325 B.R. 687 (Bankr.D.Del. 2005)......................................................12

In the Matter of Klaber Bros.,
    173 F.Supp. 83 (S.D.N.Y. 1959)..........................................................3,8

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.
    460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983) ..................12

In re Nitec Paper Corp.,
    43 B.R. 492, 11 C.B.C.2d 959 (S.D.N.Y. 1984) ...............................3,8

In Re Rovine Corp. (Burger King Corp. v. Rovine Corp.),
    6 B.R. 661 (Bkr.Ct.W.D.Tenn. 1980) ..............................................3,8

Stewart Title Guaranty Co. v. Old Republic Nat'l Title Ins. Co.,
    83 F.3d 735, 741 (5th Cir. 1996) ......................................................2

In re Texstone Venture, Ltd.,
    54 B.R. 54 (Bankr.E.D.Pa. 1983) ..................................................3,8

In re Transamerican Natural Gas Corp.,
    79 B.R. 663 (Bankr.S.D.Tex. 1987) .............................................3,5,8

In re Village Rathskeller, Inc.,
    147 B.R. 665, 671, 28 C.B.C.2d 293, 301 (Bankr. S.D.N.Y. 1992) ..........3

## Statutes

Bankruptcy Code, 11 U.S.C. § 101 et seq.

    Section 365(g) ..............................................................................7,8

    Section 365(h) ...........................................................................2,10,12

    Section 365(i) ............................................................................2,11,12

    Section 365(n) ...........................................................................2,10,12

    Section 1107 ...................................................................................2

Federal Rules of Bankruptcy Procedure

    Rule 8009 .........................................................................................1

    Rule 8010 .........................................................................................1

Delaware Local Rules

    Rule 7.1.3 .........................................................................................1

Federal Arbitration Act, 9 U.S.C. §§ 1-14................................................11

## **Treaties**

Collier on Bankruptcy, 15th Ed., vol 3, p. 365-23 ………………………………….2

Collier on Bankruptcy, 15th Ed., vol 3, ¶ 365.09[5]..………………………………8

H:\Sarit\Selby's table of contents etc 02-13-06.doc

Appellant, Selby's Market, Inc., through its attorneys Finkel, Goldstein, Rosenbloom and Nash, LLP, and Jaspan, Schlesinger, Hoffmann LLP respectfully submits this Opening Brief on appeal pursuant to Fed. R. Bankr. P. 8009 and 8010, and Del. LR 7.1.3.

## STATEMENT OF ISSUE PRESENTED

May a Chapter 11 Debtor reject an executory agreement under 11 U.S.C. § 365 and after rejecting such executory agreement, enforce an arbitration clause within that rejected executory agreement which it finds to be favorable while otherwise being released of its obligations under the rejected executory agreement?

## STATEMENT OF FACTS

The facts giving rise to this controversy are set forth within an Agreed Statement of Facts submitted by the Appellant and Appellee pursuant to an Order of this Court dated January 18, 2006.

## SUMMARY OF ARGUMENT

The issue before this Court is whether a debtor which is a party to an executory contract may reject the contract pursuant to Section 365 of the Bankruptcy Code while at the same time compel enforcement of a provision of the contract that provides for arbitration.

The law is clear that once an executory contract is rejected in bankruptcy, it is rejected in its entirety. The Third Circuit Court of Appeals has clearly spoken on this issue on three occasions; first in 1951, then in 1984, and most recently in 2003. Judge Walrath erred in finding that the Arbitration Clause remained in effect notwithstanding the rejection of the Supply Agreement. Contrary to guiding legal principles and

1

underlying policy, the Debtor here seeks to "have its cake and eat it too." However, the caselaw from the Third Circuit definitively provides that a debtor may not "cherry pick" those provisions it seeks to enforce. In fact, in Sections 365(h)(1)(C), (n), and (i) of the Bankruptcy Code Congress expressly articulated certain nonbankruptcy policies that trump rejection. Significantly, nothing in Section 365, or any other section of the Bankruptcy Code, provides that arbitration clauses are to be treated differently from other bargained-for provisions. Had Congress intended that the nonbankruptcy policy favoring arbitration override the relevant provisions of the Bankruptcy Code, it would have stated so when it enacted sweeping revisions to the Bankruptcy Code, <u>including</u> amendments to Section 365, which became effective on October 17, 2005. In rejecting the Supply Agreement, the Debtor rejected the agreement as a whole – not only those provisions which were favorable to it.

## ARGUMENT

### A. It is Black Letter Law That a Rejected Executory Contract is Rejected in its Entirety

The Bankruptcy Court erred in its finding that the arbitration clause in the Supply Agreement survives rejection. The law is clear that if a trustee (or pursuant to 11 U.S.C. § 1107, a debtor in possession) chooses to reject or assume an executory contract or lease, the executory contract or lease must be assumed or rejected in its entirety. As stated in Collier on Bankruptcy, 15th Ed., vol 3, p. 365-23:

> An executory contract may not be assumed in part and rejected in part. The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.

citing <u>Stewart Title Guaranty Co. v. Old Republic Nat'l Title Ins. Co.</u>, 83 F.3d 735, 741 (5th Cir. 1996); <u>City of Covington v. Covington Landing Ltd. P'Ship</u>, 71 F.3d 1221 (6th

2

Cir. 1995); In re Nitec Paper Corp., 11 C.B.C.2d 959, 43 B.R. 492 (S.D.N.Y. 1984); In re Village Rathskeller, Inc., 28 C.B.C.2d 293, 301, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992).

The caselaw from the majority, if not all, of the circuits is in accord. Neither the debtor nor the trustee is free to retain the favorable features of an executory contract and reject only the unfavorable ones. Support for rejection in full may be found in: In Re Rovine Corp. (Burger King Corp. v. Rovine Corp.), 6 B.R. 661 (Bkr.Ct.W.D.Tenn. 1980)("since the franchise agreement has been rejected by the defendant…the covenant not to compete must also be deemed rejected"); In the Matter of Klaber Bros., 173 F.Supp. 83 (S.D.N.Y. 1959) ("an executory contract cannot be rejected in part, and assumed in part. The Debtor, or the trustee, is not free to retain the favorable features of the contract and reject only the unfavorable ones."); In re Transamerican Natural Gas Corp., 79 B.R. 663 (Bankr.S.D.Tex. 1987) (holding that once contract is rejected, the damages clause is also rejected); In re Texstone Venture, Ltd. 54 B.R. 54 (Bankr.E.D.Pa. 1983); In re Allain, 59 B.R. 107 (Bankr.W.D.La. 1986) (non-compete clause deemed rejected when executory contract rejected since contract must be rejected in its entirety); In re David Own Case, 91 B.R. 102, (Bankr.D.Col. 1988); In re Audra-John Corp., 140 B.R. 752 (Bankr.Minn. 1992)("debtor's rejection encompasses the covenant of noncompetition"); In re Nitec Paper Corp., 43 B.R. 492, 498 (Bankr. S.D.N.Y. 1984); In re Atlantic Computer Systems, Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994).

Moreover, Third Circuit courts have historically and consistently upheld this principle. Beginning in 1951, in a case decided under the Bankruptcy Act of 1898, the

3

Third Circuit Court of Appeals, in <u>In re Italian Cook Oil Corp.</u>, 190 F.2d 994, held the following:

> A trustee is, of course, under no obligation to complete executory contracts of a debtor. By Section 70, sub. b. of the Act, the trustee is given the right to adopt or reject the executory contract. He must do one or the other. If the trustee deems the contract to possess no equity or benefit for the estate he rejects it as burdensome. If, on the other hand, he concludes that the executory contract does have an equity for the estate he adopts it. These principles have become too well established to permit doubt. <u>The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.</u> (internal citations omitted) (emphasis added).

<u>Id.</u> at 997.

Third Circuit decisions decided under current law have affirmed this longstanding rule. For example, in <u>Lee v. S. Schweiker</u>, 739 F.2d 870 (3rd Cir. 1984), the Court of Appeals stated that:

> a debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of "recoupment").

<u>Id.</u> at 876. In the leading Third Circuit decision, <u>In re Cellnet Data Systems, Inc.</u>, 327 F.3d 242 (3rd Cir. 2003) the Third Circuit Court, in the process of deciding which party was entitled to certain royalties, stated:

> Under the Bankruptcy Code, a trustee may elect to reject or assume its obligations under an exectuory contract. <u>This election is an all-or-nothing proposition – either the whole contract is assumed or the entire contract is rejected.</u> (emphasis added).

The Bankruptcy Court below arbitrarily distinguished <u>Lee</u> and <u>In re Cellnet</u> (cited above) from the case at hand stating merely that the above quotations concerning the "all-or-nothing" proposition were "taken out of context" because neither <u>Lee</u> nor <u>In re Cellnet</u>

4

addressed the viability of an arbitration clause in a rejected agreement. However, neither in <u>Lee</u> nor <u>In re Cellnet,</u> or in any of the cases cited above, have courts ever drawn a distinction between an arbitration clause or any other type of clause when deciding whether the "all-or-nothing" proposition applies. In fact, the history of caselaw suggests that the nature of the clause is entirely irrelevant, and courts have upheld the all-or-nothing principle with respect to all types of bargained-for provisions. It would be unfair and illogical to uphold an arbitration clause on the basis that the parties had bargained for it pre-petition when in fact, numerous, and perhaps even more beneficial rights are terminated each time a contract or lease is rejected.

The law is clear that, regardless of the nature of the provision in question, a trustee or debtor has only two options with respect to an unprofitable executory contract: (1) assume the contract in its entirety, or (2) reject the contract in full. The rejecting party may not enforce only those provisions that serve in its best interests. See <u>In re Atlantic Computer Systems, Inc.</u>, 173 B.R. 844, 849 (S.D.N.Y. 1994) ("a debtor may not 'cherry pick' pieces of contracts it wishes to assume").

Moreover, the caselaw is clear that the "all-or-nothing" doctrine applies with equal force to both remedial and non-remedial clauses. In other words, even remedial clauses, <u>ie.</u>, those clauses that do not take effect until <u>after</u> a breach occurs, cannot be enforced once the underlying contract is rejected. Historically, courts have not distinguished between liquidated damage provisions, or non-compete clauses, both of which do not come into play until after a contract is terminated, and general non-remedial provisions. See e.g. <u>In re Transamerican Natural Gas Corp.</u>, 79 B.R. 663 (Bankr.S.D.Tex. 1987) (holding that once contract is rejected, the damages clause is also

5

rejected); In re Allain, 59 B.R. 107 (Bankr.W.D.La. 1986) (non-compete clause deemed rejected when executory contract rejected since contract must be rejected in its entirety); In re Audra-John Corp., 140 B.R. 752 (Bankr.Minn. 1992)("debtor's rejection encompasses the covenant of noncompetition"). Thus the Bankruptcy Court's purely arbitrary distinction must be overturned.

Aside from the fact that the legal precedents support Appellant's position, upholding the Bankruptcy Court's findings would yield unjust results while doing nothing to further the relevant Bankruptcy Code policies. The underlying policy for the "all-or-nothing" principle is that the interests of both the debtor and non-debtor entities should, to some degree, be taken into consideration. Otherwise, courts would have allowed a debtor to reject only those provisions that are unfavorable to it. Congress established the extraordinary power of rejecting an otherwise binding agreement so that a debtor is given an opportunity to revitalize its operations, and is not saddled with the same agreements that caused it to file for bankruptcy in the first place. That is, but for its ability to reject the contracts that may have led to its demise, a debtor's restructuring efforts would be futile.

However, a debtor's power to reject an otherwise binding contract is not unfettered. In balancing (i) the needs of the debtor to successfully reorganize with (ii) the needs of the non-debtor entity to survive post-contract rejection, the courts have established a happy medium: a debtor may reject any burdensome contract so long as such contract is rejected in its entirety. It would be unjust to allow a debtor to abandon its obligations (eg., obligations to pay) while retaining its rights (eg., right to continued supply of goods) under a given agreement. Recognizing that Congress could not have

intended for a debtor to continue to receive benefits solely at the expense of the non-debtor entity, courts have found that a fair and reasonable balance is to allow a debtor to reject any executory contract so long as the agreement is rejected as a whole.

With respect to an arbitration clause, as in the present case, the Debtor has everything to gain and nothing to lose from arbitrating the dispute. If the dispute were to be arbitrated, Selby's would be deprived of its right to a jury trial. Selby's would also lose its right to full discovery. Moreover, Selby's would be obligated to reimburse the Debtor for certain legal fees. While the Fleming/PCT may wish to arbitrate, arbitration is not required in order for the debtor to successfully rehabilitate or to otherwise commence a plenary action in a court of competent jurisdiction. Thus, in balancing the interests of both parties, if the non-debtor does not wish to arbitrate, and Selby's does not, the debtor should not enjoy more rights than was envisioned by Congress under the Bankruptcy Code. Judge Walrath cannot legislate where Congress has not.

### (B) The rights and obligations of rejection extend beyond the confines of Section 365(g)

One of the reasons stated by the Bankruptcy Court in reaching its conclusion was that Section 365 of the Bankruptcy Code does not expressly state that arbitration clauses survive rejection. However, the Bankruptcy Court wrongly opined that the complete effect of rejection is simply as "is stated in the Code at 365(g)…which says it simply means there's a breach of the contract as of immediately before the petition date." See Transcript of Hearing at 12, 36-38 (stating that rejection is a breach of contract and "that's all it is.").

However, while Section 365(g) dictates the timing of the breach for the purpose of quantifying damages, the full effects of rejection clearly extend beyond this

7

subsection. The Bankruptcy Court's interpretation is a radical simplification that nullifies hundreds of decisions that have defined the rights and obligations associated with rejection. See e.g. In Re Rovine Corp. (Burger King Corp. v. Rovine Corp.), 6 B.R. 661 (Bkr.Ct.W.D.Tenn. 1980; In the Matter of Klaber Bros., 173 F.Supp. 83 (S.D.N.Y. 1959); In re Transamerican Natural Gas Corp., 79 B.R. 663 (Bankr.S.D.Tex. 1987); In re Texstone Venture, Ltd. 54 B.R. 54 (Bankr.E.D.Pa. 1983); In re Allain, 59 B.R. 107 (Bankr.W.D.La. 1986); In re David Own Case, 91 B.R. 102, (Bankr.D.Col. 1988); In re Audra-John Corp., 140 B.R. 752 (Bankr.Minn. 1992); In re Nitec Paper Corp., 43 B.R. 492, 498 (Bankr. S.D.N.Y. 1984); In re Atlantic Computer Systems, Inc., 173 B.R. 844, 849 (S.D.N.Y.). In addition, this interpretation is inconsistent with the wording of Section 365 as a whole. Cleary, there is much more to rejection than meets the eye in Section 365(g). Section 365(g) is an important provision for the debtor where notwithstanding a post-petition rejection of an executory contract, damages presumptively give rise to pre-petition claims and not post-petition administrative claims. Specifically, Collier on Bankruptcy defines the effect of Section 365(g) as follows:

> that if a contract or lease was assumed previously and then rejected, the breach is at the time of rejection unless the case was converted…in which case the breach is immediately before the date of the conversion, unless such assumption itself took place after the conversion, in which case the breach is at the time of rejection.

¶ 365.09[5].

In fact, the doctrine that an executory contract must be rejected in its entirety is so entrenched in our bankruptcy law that the courts have had to develop a separate analysis for circumstances in which a contract is "divisible" or "severable" under state law. In

such circumstances, a debtor may choose to reject a severable executory contract. This exception to the general rule would be meaningless if debtors could readily reject a portion of non-divisible contracts. See e.g., Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co, 83 F.3d 735 (5th Cir. 1996); In re Gardinier, Inc., 831 F.2d 974 (11th Cir. 1987), cert. denied, 488 U.S. 853, 109 S.Ct. 140 (finding one document severable into two agreements for the purpose of separately assuming or rejecting the two agreements).

### C.    State law is Inapplicable and Irrelevant

Another reason stated by the Bankruptcy Court in reaching its decision was that "under state law, a breach of a contract that contains an arbitration clause, does not mean the arbitration clause disappears." See Transcript of Hearing at 12. However, under state law, a party is not protected by the automatic stay provisions when it chooses to breach a contract. State law does not dictate which, if any, clauses disappear when a breach of contract occurs within the context of bankruptcy proceedings. The rights and obligations of contracting parties under state law differ dramatically from those same parties' rights within the realm of bankruptcy. Moreover, as discussed above, and contrary to the Bankruptcy Court's findings, liquidated damages and other remedial provisions in a contract are deemed rejected when a contract is rejected in bankruptcy although they may, and often do, withstand a breach of contract claim in state court.[1]

---

[1] Even assuming state law is relevant, the rule in the majority of states is that the non-breaching party will be discharged from further performance of its obligations under the contract when the breach goes to the root of the contract. Here, the breach went to the root of the contract since the Debtor completely stopped delivering goods to Selby's. So even under state law, Selby's is not obligated to pursue arbitration against its will since arbitration and the costs associated with it are part of its obligations.

9

### D. The Wording of Section 365 Supports a Determination that Arbitration Clauses Do Not Survive Rejection

Had Congress intended arbitration clauses to be treated differently under the Bankruptcy Code from other provisions in a contract it would have stated so. Certain subsections of Section 365 of the Bankruptcy Code explicitly provide that certain clauses survive rejection. Congress has explicitly delineated in Section 365 the circumstances under which nonbankruptcy law and policies apply despite rejection. Section 365(h)(1)(C), for example, provides that:

> The rejection of a lease of real property in a shopping center with respect to which the lessee elects to retain its rights…does not affect the enforceability under nonbankruptcy law of any provision in the lease pertaining to radius, location, use, exclusivity, or tenant mix or balance.

Here, Congress sought to promote certain nonbankruptcy policy and thus expressly imputed the policy, which is founded upon the interests of commerce, that a landlord of a shopping center has the right to oversee the center's tenant mix so as maximize overall occupancy, into the bankruptcy regime.

Similarly, under Section 365(n) of the Bankruptcy Code, Congress sought to advance the nonbankruptcy policy of furthering the development of intellectual property. To this end, this section spells out the rights of a licensee under an intellectual property contract notwithstanding a licensor's rejection of the agreement. Section 365(n) provides:

> (1)　If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect –
> (A)　to treat such contract as terminated by such rejection if such rejection by the trustee amounts to such a breach as would entitle the licensee to treat such contract as terminated by virtue of its own

> terms, applicable nonbankuptcy law, or an agreement made by the licensee with another entity; or
>
> (B) to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced…

Likewise, Section 365(i) provides a purchaser of real estate additional rights, under given circumstances, if an underlying executory contract for the sale of real property, or for the sale of a timeshare interest under a timeshare plan is rejected.

Significantly, however, nowhere in Section 365 or elsewhere in the Bankruptcy Code did Congress provide that an arbitration clause is to be treated differently, or that the nonbankruptcy policy in favor of construing arbitration clauses liberally (as it applies outside of the bankruptcy arena) means that arbitration clauses do not get rejected alongside other provisions.

In its zeal to provide arbitration, the Bankruptcy Court perfunctorily concluded that Congress must have intended arbitration clauses to survive rejection when it promulgated the Federal Arbitration Act (the "FAA")[2]. However, sweeping changes were recently made to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 which became effective on October 17, 2005.[3] Significantly, while Congress made several amendments in the 2005 Bankruptcy Code

---

[2] The Federal Arbitration Act; Title 9, US Code, Section 1-14, was first enacted February 12, 1925 (43 Stat. 883), codified July 30, 1947 (61 Stat. 669), and amended September 3, 1954 (68 Stat. 1233). Chapter 2 was added July 31, 1970 (84 Stat. 692), two new Sections were passed by the Congress in October 1988 and renumbered on December 1, 1990 (PLs669 and 702); Chapter 3 was added on August 15, 1990 (PL 101-369); and Section 10 was amended on November 15.

[3] Pub. L. No. 109-8 (2005).

11

Amendments to Section 365[4], including amendments relating to rejection of a real property lease, no amendment was made instructing courts to enforce arbitration clauses in bankruptcy cases.

Moreover, while Congress has explicitly legislated the effects of rejection in subsections 365(h),(i), and (n), it has not expanded the rights of debtors or non-debtor parties with respect to arbitration clauses.  The fact is that the Bankruptcy Code is generally an all encompassing, self-standing set of laws that trump other nonbankruptcy policies.  For example, bankruptcy law turns the doctrine of sanctity of contract – one of the longest standing and most pervasive policies in the history of our nation – on its head.  Just because there is a strong nonbankruptcy policy for arbitration does not mean that it is automatically imputed into the Bankruptcy Code absent a clear direction by Congress.

### E. The Reasoning in *Madison Foods* is Equally Unavailing

Finally, the Bankruptcy Court's reliance on Madison Foods[5] was misplaced since Madison Foods was wrongly decided and therefore, its findings should not apply to the present case.  Strikingly absent from the Madison Foods decision is any reference, mention or recognition of controlling Third Circuit caselaw as set forth in Lee and Cellnet.  It is as if these cases do not exist.

In Madison Foods, Judge Walrath reached her holding upon a faulty interpretation of the scope of the strong policy in favor of arbitration.  The Appellant does not question the fact that, generally speaking, there is a strong policy in favor of arbitration.  The Supreme Court, in Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19,

---

[4] Congress amended subsections (b)(1)(A) and (b)(2)(D), (d)(4), (f)(1), and subsection (p) was added. Significantly, no changes were made to reflect a policy of favoring arbitration in bankruptcy proceedings.
[5] 325 B.R. 687 (Bankr. D. Del. 2005).

12

103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983) stated that "[a]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or a like defense to arbitrability." Id. at 24-25.  Moses concerned disputes between a hospital, and a construction contractor and architect that arose out of a contract for the construction of additions to a hospital building.  According to the parties' agreement, any dispute between the hospital and the construction contractor could be submitted by either party to arbitration.  Significantly, however, Moses did not arise in the context of bankruptcy proceedings and thus is factually distinguishable from the instant case.  In Moses, the Supreme Court was not asked to examine the interplay between the arbitration policy in general with the "all-or-nothing" principle of rejection under Section 365 of the Bankruptcy Code. Thus Moses is not binding on the present case.  In sum, if an executory contract is rejected, its arbitration clause is also rejected.

## CONCLUSION

For the foregoing reasons, Selby's respectfully requests that this Court (a) find that the Arbitration Clause is inapplicable to the parties' dispute, (b) reverse the Bankruptcy Court's September 16, 2005 Order, and (c) grant such other and further relief as this Court deems appropriate.

Dated: February 17, 2006

                                      Respectfully submitted,

*/s/ Laurie S. Polleck*
Laurie S. Polleck (#4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

- and -

Neal M. Rosenbloom, Esquire
Sarit R. Shmulevitz, Esquire
FINKEL GOLDSTEIN ROSENBLOOM & NASH, LLP
26 Broadway, Suite 711
New York, NY 10004
Telephone: (212) 344-2929
Facsimile: (212) 422-6836

ATTORNEYS FOR THE APPELLANT

**CERTIFICATE OF SERVICE**

I, Laurie S. Polleck, do hereby certify that on February 17, 2006 I caused a copy of the foregoing **Opening Brief of Appellant** to be served upon the parties by hand delivery.

Laurie S. Polleck (4300)
JASPAN SCHLESINGER
HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

TO:
**Laura Davis Jones**
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

**David M. Fournier**
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

**James E. O'Neill, III**
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100