## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: Fleming Companies, Inc. et al | : | |
| | : | |
| | : | Bankruptcy Case No. 03-10945 |
| | : | |
| | : | |
| | : | |
| | : | |
| Selby's Market Inc., | : | |
| | : | |
| Appellant, | : | Civil Action No. 05-749 |
| v. | : | |
| | : | |
| PCT, | : | |
| | : | |
| Appellee. | : | |
| | : | |

---

### APPELLEE'S BRIEF IN OPPOSITION TO APPELLANT'S OPENING BRIEF

---

Laurence M. Huffman, Esq.
Beauchamp M. Patterson, Esq.
McAFEE & TAFT, P.C.
211 N. Robinson
10th Floor, Two Leadership Square
Oklahoma City, OK  73102
Telephone: (405) 235-9621

- and -

James E. O'Neill (Del. Bar. No. 4042)
PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone: (302) 778-6407

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.    REINSTATEMENT OF ISSUE PRESENTED ............................................................1

II.   STATEMENT OF FACTS ..............................................................................................2

III.  SUMMARY OF ARGUMENT .......................................................................................2

VI.   ARGUMENT....................................................................................................................3

      **A.** An Arbitration Agreement is Not Rejected Along With the Entirety of a Rejected
      Executory Contract ...............................................................................................………..4

      **B.** An Executory Contract is Rejected For Executory Purposes Only...……………..........9

      **C.** Arbitration is the Federally Favored Form of Dispute Resolution ...............………...12

V.    CONCLUSION ..............................................................................................................16

## TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Allied-Bruce Terminx Cos. v. Dobson,* 513 US 265 (1995).............................................................14
*Eastover Bank for Savings v. Austin Development Co.,* 19 F.3d 1077 (5th Cir. 1994) ...................3
*Societe Nationale Algerienne Pour la Recherche des Hydrocarbues v. Distrigas,* 80 B.R. 606
    (D.Mass. 1987)..............................................................................................................3, 5, 6
*In re Atlantic Computer Sys., Inc.,* 173 B.R. 844 (S.D.N.Y. 1994)..............................................11
*In re Audra-John Corp.,* 140 B.R. 752 (Minn. Bankr. 1992) .......................................................11
*In re Becknell & Crace Coal Co., Inc.,* 761 F.2d 319 (6th Cir.) (1985)........................................10
*In re Cellnet Data Systems, Inc.,* 327 F.3d 242 (3rd.Cir. 2003) ...................................................11
*In re Madison Foods Inc.,* 325 B.R. 687 (Del.Bankr.2005) ..................................................8, 9, 10
*In re Mushroom Transportation Co.,* 78 B.R. 754 (Bankr.E.D.Pa. 1987).......................................3
*In re Nitec Paper Corp.,* 43 B.R. 492 (S.D.N.Y. 1984)................................................................11
*In re Rovine Corp.,* 6 B.R. 661 (Bkr. Ct. W.D. Tenn. 1980).........................................................11
*In re Taylor,* 913 F.2d 10s (3rd Cir. 1990) ...................................................................................3
*In re Teleglobe Comm. Corp.,* 304 B.R. 79 (D.Del. 2004)..............................................................3
*In re Klaber Bros.,* 173 F. Supp. 83 (S.D.N.Y. 1959) ..................................................................11
*Lubrizol Enterprises, Inc., v. Richmond Metal Finisher, Inc.,* 756 F.2d 1043 (4th Cir. 1985) ......10
*Lummus Co. v. Commonwealth Oil Refining Company Inc.,* 280 F.2d 915, 924 (1st Cir) 364 U.S.
    911 (1960)............................................................................................................................6
*Metronic Avenue Inc. v. Advanced Cardiovascular System Inc.,* 247 F.3d 44 (3rd Cir. 2001)......14
*Miller v. Chateau Communities, Inc.,* 282 F.3d 874 (6th Cir. 2002)................................................3
*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1 (1983)........................14
*N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513 (1984)..................................................................10
*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967)....................................6, 14
*Southeastern Pennsylvania Trans. Authority v. AWS Remediation Inc.,* 2003 WL 21994811
    (E.D.Pa. 2003).....................................................................................................................7


Rules                                                                                          Page(s)

11 U.S.C. §365........................................................................................................................12
11 U.S.C. §365(g)(1) ................................................................................................................3
9 U.S.C. §2.............................................................................................................................13
9 U.S.C. §1.............................................................................................................................13
9 U.S.C. §3.............................................................................................................................13
9 U.S.C. §4.............................................................................................................................13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: Fleming Companies, Inc. et al | : | |
| | : | |
| | : | Bankruptcy Case No. 03-10945 |
| | : | |
| | : | |
| | : | |
| | : | |
| Selby's Market Inc., | : | |
| | : | |
| Appellant, | : | Civil Action No. 05-749 |
| v. | : | |
| | : | |
| PCT, | : | |
| | : | |
| Appellee. | : | |
| | : | |

## APPELLEE'S BRIEF IN OPPOSITION TO APPELLANT'S OPENING BRIEF

Appellee, The Post Confirmation Trust for Fleming Companies, Inc. (the "PCT"), by and through its attorneys, respectfully submits this Brief in Opposition to Appellant's Opening Brief pursuant to Fed. R. Bankr. P. 8009 and 8010, and Del. LR 7.1.3. For the reasons set forth herein, the PCT respectfully requests that this Court overrule Appellant and instead give full force and effect to the Order dated September 16, 2005 (the "Order") issued by the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware. A copy of the Order is attached hereto as Exhibit "1".

### I.    RESTATEMENT OF ISSUE PRESENTED

The PCT submits the following as a more accurate and appropriate statement of the issue now before this Court:

> Whether rejection of an executory contract automatically voids the
> parties' arbitration agreement contained therein?

## II.    STATEMENT OF FACTS

The PCT acknowledges that the facts giving rise to this dispute are those set forth in the parties' Agreed Statement of Facts, submitted in accordance with the Order of this Court and dated January 18, 2006.

## III.    SUMMARY OF ARGUMENT

The United States Bankruptcy Code (the "Code") provides that the effect of a debtor's rejection of an executory contract is to deem that contract—and all current or future executory obligations arising under that contract—as having been breached on the date immediately preceding the filing of the bankruptcy petition.

As an item ancillary to the intended bargained-for exchange, executory contracts often contain dispute resolutions provisions that are not themselves executory in nature. These negotiated and mutually agreed upon provisions are not executory because they confer no particular benefit on either party nor impose any requirement of future performance, but rather are simply mutually agreed procedural devices establishing the means and forum by which disputes between the parties are to be resolved in the event of some material breach. Thus, when an executory contract is "breached" by virtue of its rejection in bankruptcy, the non-executory dispute resolution provision contained therein is invoked and, absent some contrary order by a bankruptcy court judge (who at all time retains jurisdiction over "core" matters), establishes the forum to which the parties will submit their controversies. When the provision establishes arbitration as the means for disputes resolution, that federally favored form of dispute resolution should be enforced irrespective of any perceived subjective benefits or detriments associated therewith.

2

## IV.    ARGUMENT

Both Appellant and Appellee agree, and the Code is very clear, that the rejection of an executory contract in bankruptcy is to be treated as a breach of that contract occurring on the date prior to the filing of the bankruptcy petition. 11 U.S.C. §365(g)(1); *Appellant's Opening Brief*, pp. 7-8.    As several courts have noted, considering a contract as "breached" has a wholly different legal effect in the bankruptcy context than considering it to have been "terminated" or "invalidated". *See e.g., Societe Nationale Algerienne Pour la Recherche des Hydrocarbures v. Distrigas,* 80 B.R. 606, 608 (D. Mass. 1987) ("What may initially appear to be a pointless semantic dispute has significant ramifications in this [context], as both "breach" and "termination" are employed as distinct terms of art under the Bankruptcy Code."); *In re Mushroom Transportation Co.,* 78 B.R. 754, 756 (Bankr. E.D. Pa. 1987) ("Rejection does not make the contract null and void *ab initio*; it simply protects the estate from assuming contractual obligations on a priority, administrative basis"); *In re Taylor,* 913 F.2d 102, 106-107 (3rd Cir. 1990) ("Rejection . . . is equivalent to a non-bankruptcy breach."); *In re Teleglobe Comm. Corp.,* 304 B.R. 79, 83 (D. Del. 2004) (holding that a rejection of unexpired lease under the Code "is a breach of the lease and not a termination thereof"); *Eastover Bank for Savings v. Austin Development Co.,* 19 F.3d 1077, 1082 (5th Cir.1994) ("Rejection is treated as a breach to preserve the rights of the party whose lease with the debtor has been rejected by providing a pre-petition claim; if rejection were deemed a complete, immediate termination, it is not clear what the measure of the creditor's claim would be."); *Miller v. Chateau Communities, Inc.,* 282 F.3d 874, 878 (6th Cir.2002) ("Rejection of debtor's lease under § 365(d)(1) constitutes a breach of the lease.").

To give effect to Appellant's argument, which is essentially that the rejection of an executory contract in bankruptcy means that <u>all terms and provisions contained in the contract</u>

3

are of no remaining force or effect, would impermissibly have the same net effect as holding an executory contract terminated upon rejection, rather than merely breached as of the date of the filing of the petition. Accordingly, the seminal question in this dispute is whether the rejection of an executory contract rejects all existing terms and provisions contained in the contract, or whether such rejection rejects only those terms and provisions that are executory in nature (e.g., those terms and provisions that impose some future obligation or demand some future performance from either party), leaving behind a non-executory arbitration agreement to be invoked in response to the breach deemed to have occurred on the day prior to the filing of the bankruptcy petition. In its Order, the Bankruptcy Court found the latter position to be both more legally supportable and functionally enforceable. The PCT agrees and now asks this Court to uphold the Bankruptcy Court's Order.

A.    **An Arbitration Agreement is Not Rejected Along With the Entirety of a Rejected Executory Contract.**

In its Opening Brief, Appellant contends that the Bankruptcy Court "arbitrarily distinguished" certain of Appellant's originally-cited cases, and goes on to state that, in none of those cases nor any of the cases cited by Appellant in its Opening Brief, have courts "ever drawn a distinction between an arbitration clause or any other type of clause when deciding whether the 'all-or-nothing' proposition applies." *Appellant's Opening Brief*, p. 5.    Appellant infers that there are no such cases, and that correspondingly the nature of the underlying contractual right must be deemed irrelevant for purposes of determining if it is invalidated right along with other provisions in an executory contract when the contract is rejected. In actuality, however, that is not true. Appellant simply fails to acknowledge the several decisions existing within this and other jurisdictions (including one particularly applicable case from the Delaware Bankruptcy

4

Court which Appellant attempts unconvincingly to discredit) that discuss the treatment to be given a mutually agreed upon arbitration clause contained within a rejected executory contract.

In the particularly instructive case of *Societe Nationale Algerienne Pour la Recherche des Hydrocarbures Corp. v. Distrigas Corp.*, 80 B.R. 606 (D.Mass. 1987), the United States District Court for the District of Massachusetts had before it an appeal from a bankruptcy court's order denying a creditor's motion to modify the Automatic Stay to allow for arbitration of disputes it had with the debtor arising out of the parties' contract, which contained an express arbitration agreement. The bankruptcy court originally denied the motion based on a view that, because an executory contract is rejected on an "all-or-nothing" basis, it follows that an arbitration agreement contained in the executory contract is also rejected as of the date of rejection, rendering the question of enforceability moot. *See Distrigas*, 80 B.R. 606 at 607. That reasoning, which is strikingly similar to the arguments now advanced by Appellant, was rejected in a detailed opinion set forth by the Massachusetts District Court. While the *Distrigas* Court noted its "hearty approval" of the "general proposition" that an executory contract "must either be accepted or rejected in its entirety, and the accompanying proposition that the parties to a contract may not selectively revive provisions in order to extract benefits at the other party's expense," the Court went on to explain that, those accepted principles of black letter law notwithstanding, "a different tact is more appropriate with respect to arbitration clauses which represent the freely negotiated methods of dispute resolution selected *in advance* by the parties. *Distrigas*, 80 BR 606, at 609. (Emphasis in original).

The *Distrigas* Court reasoned that, based on all of the competing interests, a "strong argument" should be made for construing arbitration agreements as "separable" from the principal contract even though they are physically embodied in the same instruments; noting a

5

line of First Circuit authority expressing such a preference and holding that "allowing an arbitration clause to be automatically invalidated along with the principal agreement would be akin to destroying precisely what the parties had sought to create as a dispute resolution device." *Distrigas*, 80 B.R. at 609, *quoting, Lummus Co. v. Commonwealth Oil Refining Company Inc.*, 280 F.2d 915, 924 (1st Cir.), *cert. denied*, 364 US 911 (1960) (treating an arbitration agreement as a separable provision in an action to rescind the overall contract on the basis of fraud, and directing the dispute to be heard in arbitration); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 18 L.Ed.2nd 1270 (1967) (enforcing arbitration provision and requiring arbitration of plaintiff's rescission action which was based on fraud).

  The application of *Distrigas* and its cited cases here is apparent. Contrary to Appellant's assertion, there is a very real basis for a bankruptcy court to distinguish between arbitration provisions contained in an executory contract and other performance-related obligations contained in the same contract. As the *Distrigas* court noted, while there is undoubtedly a strong policy in favor of rejecting all performance or obligation-related clauses from an executory contract when the contract is rejected *in toto*, there is no reason to similarly deem the arbitration clause rejected as it merely reflects the negotiated dispute resolution strategy of the parties in the event of a breach. *Id.* at 609. Indeed, it is particularly telling that it was the <u>debtor</u> in *Distrigas* attempting to avoid the effect of the arbitration provision, whereas in the instant matter it is the <u>creditor</u> (Appellant) who seeks to be free of the parties' mutually agreed upon dispute resolution provision. That this is so speaks to the overall neutrality of arbitration provisions in general (in some instances it will be the debtor who wants to avoid arbitration because of some perceived benefit of going through court litigation, while in others it will be the creditor), and reiterates the reasons why parties put these agreements in a contract in

the first place, i.e., so that they can eliminate *post hoc*, post-breach gamesmanship and can instead inject a degree of certainty regarding the manner in which disputes will be resolved.

Likewise, in *Southeastern Pennsylvania Trans. Authority v. AWS Remediation Inc.*, 2003 WL 21994811 (E.D.Pa. 2003)(a copy of which is attached hereto as Exhibit "2"), the United States District Court for the Eastern District of Pennsylvania was asked to determine whether an assignee of certain executory contracts that were ultimately rejected in bankruptcy could invoke the arbitration clauses contained in the rejected contracts as a means of resolving prior existing disputes with the original creditor.   The creditor in *AWS*, citing cases similar to those now relied upon by Appellant, sought to avoid enforcement of the arbitration agreement arguing that the rejection of the underlying executory contracts meant that the contracts were rejected for "all purposes" and that any arbitration agreement contained therein "dies with the contract." *AWS*, 2003 WL 21994811 *3.   The *AWS* court disagreed, holding that such an argument fails for two reasons: (1) that to allow a party to avoid arbitration by simply terminating the contract would render arbitration clauses illusory and meaningless; and (2) that while a debtor may reject a contract in its "entirety" it may not invalidate freely negotiated methods of dispute resolution as they apply to pre-petition acts. *See Id at *3*. Because the executory contracts were rejected only to the extent they were executory, reasoned the *AWS* court, such rejection had no impact on those provisions, including the arbitration provisions, which did not involve any further executory obligations on the part of either party. *See Id.* As with the *Distrigas* decision, the *AWS* decision also provided ample basis and analysis for the Bankruptcy Court to distinguish between giving effect to Fleming and Appellant's mutually agreed upon arbitration provision, while at the same time recognizing the Supply Agreement as rejected for purposes of all remaining executory obligations.

7

Further, the United States Bankruptcy Court for the District of Delaware reached exactly the same conclusion in *In re Madison Foods Inc.*, 325 B.R. 687 (Del. Bankr. 2005), a case that Appellant attempts wrongly to discredit. In *Madison Foods*, which Appellant conclusorily identifies as simply "wrongly decided," the bankruptcy court gives a detailed analysis of the effect of rejection on an arbitration clause contained in an executory contract. In that factually identical case, creditors of the estate of Fleming Companies Inc. argued that, because Fleming rejected a Facility Standby Agreement (which is functionally the same as the Supply Agreement at issue here), it could no longer seek to enforce the arbitration provision contained therein.

The *Madison Foods* court, which specifically followed the *Distrigas* and *AWG* decisions and was not, as Appellant suggests, based on some erroneous application of federal arbitration law, concluded that rejection of an executory contract did not void an arbitration clause because rejection is nothing more than a breach of the contract and arbitration clauses are typically and routinely invoked by only one party in order to resolve disputes that occur when a breach of contract occurs. *See Madison Foods*, 325 B.R. 687, 693-694. The *Madison Foods* court also reasoned that the debtor's attempt to enforce the arbitration provision under the terms of the contract was not tantamount to attempting to compel some "other substantive performance under the contract," of the kind that would be impermissible under the applicable "all-or-nothing" reasoning advanced by the Appellant in this case. *Id.* at 693. Rather, the court held that, since rejection of an executory contract is in fact a breach of the contract occurring on the date prior to the bankruptcy filing, the arbitration provision –which is a separate non-executory provision that does not seek to compel substantive performance—contained in the rejected contract is invoked

8

and enforceable absent some showing of fraud in the inducement. *See id.* Appellant has made no claim of fraud in the inducement, and thus is subject to this holding.

The reasoning of these cited cases is sound. Arbitration agreements are not the bargained-for focus o f a c ontract, b ut a re i nstead p rocedural a ncillaries having n o p ositive o r negative effect on either party but merely memorializing their separate mutual agreement to resolve disputes in a specific manner in the event of breach. As such, these provisions should be enforced as d rafted i n the e vent o f rejection o f the o ver-arching executory contract, w hich i s itself deemed to be a breach of the kind which would normally invoke the arbitration agreement. To allow either a debtor or creditor to avoid the breach of an arbitration provision by simply couching the arbitration provision as a separate executory provision that is invalidated the minute an e xecutory contract i s i tself r ejected w ould b e t o p revent t he v ery certainty t hat t he p arties originally sought to include. It is for these reasons that the Bankruptcy Court entered its Order acknowledging the enforceability of the arbitration provision, and it is on this basis which this Court should enforce the Order rendered.

**B.    An Executory Contract is Rejected For *Executory* Purposes Only.**

Notwithstanding the foregoing, Appellant goes to great lengths to cite a myriad of cases all for a claimed "black letter" rule that an executory contract is rejected for all purposes if rejected by the debtor, and that such rejection is "an all-or-nothing proposition-either the whole contract is assumed or the entire contract is rejected." *See Appellant's Opening Brief*, § A, pp. 2-7 (and cases cited therein). Appellant argues that, once rejected, all terms, conditions and provisions in an executory contract are immediately invalidated lest the trustee or debtor be allowed to "cherry pick" provisions subjectively deemed to be favorable to it and unfavorable to the affected creditor. *Id.* While Appellant's cited cases unquestionably stand for the proposition

9

that a debtor cannot reject an executory contract, thereby relieving the estate of the burden of further performance under the contract while at the same time demanding return performance from an affected creditor, Appellant cannot extend those tautological holdings as far as it now attempts.

Instead, what is plainly intended by Appellant's cited line of cases is that a rejected executory contract is rejected for purposes of all <u>executory performance obligations</u> remaining under the terms of the contract. In that context, an executory performance obligation means an obligation to do something in the future under the contract, and is an obligation of either the debtor or the other party to the contract that, as of the date of rejection, is so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other party. *See generally, In re Becknell & Crace Coal Co.,* 761 F.2d 319, 322 (6th Cir.), *cert. denied,* 474 U.S. 1006,88 L.ed.2d 460 (1985) (executory contract includes an obligation for the debtor or other party to do something in the future); *N.L.R.B v. Bildisco & Bildisco,* 465 U.S. 513 (1984) (reasoning that Congress intended to use the term 'executory' to mean a contract "on which performance remains due to some extent on both sides"); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043 (4th Cir. 1985), *cert. denied,* 475 U,S. 1057, 89 L.Ed. 2d 592 (1986).

In Appellant's relied upon cases, the underlying executory contracts contemplate some future performance obligation on the part of either the debtor or creditor that, by their very terms, are intended to be the bargained-for benefit of the contract. These stand in stark contrast to the purpose intended by an arbitration agreement, which does not seek to compel payment or impose (or bar) any other substantive performance or related relief under a contract, but seeks only to order the means by which disputes are resolved. *See Madison Foods,* 325 B.R. at 693.

10

Certainly, allowing a debtor to obtain the intended benefit of its bargain while denying the creditor a corresponding bargained for benefit would be inequitable and unenforceable, and provides the basis on which the respective courts cited by Appellant base their reasoning for considering an executory contracts rejected "for all purposes". *See generally, In re Nitec Paper Corp.*, 43 B.R. 492 (S.D.N.Y. 1984) (holding that debtor could not assume an executory contract to provide power services without also assuming the contract's provision barring future resale); *In re Rovine Corp.*, 6 B.R. 661 (Bkr. Ct. W.D. Tenn. 1980) (holding that the relief afforded a franchisor in a covenant not to compete contained in a franchise agreement was lost once the franchise agreement was rejected in bankruptcy); *In re. Klaber Bros.*, 173 F. Supp. 83 (S.D.N.Y. 1959) (holding debtor's rejected of an executory collective bargaining agreement would result in rejection of all future concessions promised by the Union of an executory nature); *In re Audra-John Corp.*, 140 B.R. 752 (Minn. Bankr. 1992) (franchise agreement case in which rejection of executory franchise agreement carried with it rejection of corresponding non-compete obligation); *In re Atlantic Computer Sys., Inc.*, 173 B.R. 844, 849 (S.D.N.Y. 1994) (finding that debtor lessor could not assume the payment benefits of an equipment lease while rejected certain service obligations attendant to the lease); *In re Cellnet Data Systems, Inc.*, 327 F.3d 242 (3rd. Cir. 2003) (recognizing the general proposition of 'all-or-nothing' rejection, but applying the Congressionally-created exception allowing licensees of intellectual property to continue the use of the license in the normal course and in the manner existing immediately prior to the filing of the bankruptcy petition).

The duties and obligations at issue in these and other cited cases were the bargained-for performance obligations forming the basis for the executory contracts. Against this

11

background, it makes sense for the respective courts to hold that, if the debtor is not going to perform under a rejected contract, it cannot seek to enforce return performance.

A corollary can be drawn in the present case by reference to the parties' Supply Agreement, which had several defined performance obligations running in favor both Appellant and Fleming, respectively. For example, the Supply Agreement required Fleming to commit to supply Appellant at a defined "Service Level" of 90% over a period of time. *See Supply Agreement*, Exhibit "3" attached hereto, pp. 2-3, ¶6. Likewise, the Supply Agreement committed Appellant to use Fleming as its primary supplier, and to achieve a defined "Teamwork Score" of greater than 50%. *See Supply Agreement*, Exh. "3", p.2, ¶3. Upon rejecting the Supply Agreement as an executory contract in bankruptcy, Fleming could not, under the extant case law, alleviate its obligation to provide a 90% service level while electing to retain the right to insist on a Teamwork Score of 50% or greater from Appellant. To do so would be the very kind of "cherry picking" that federal courts do not allow, and which Appellant's cited cases would preclude under the guise of the "rejected for all purposes" doctrine. However, as described in Section A, above, this doctrine has no useful application to neutral dispute resolution provisions in a rejected executory contract that, by their terms, do not require or impose any performance obligations, but rather serve only to delineate the process by which disputes are to be resolved.

**C.    Arbitration is the Federally Favored Form of Dispute Resolution.**

Finally, Appellant argues that Congress's "intent" not to allow arbitration agreements to be treated separately from the rest of a rejected executory contract can be discerned by reference to what it might have, but did not, include in 11 U.S.C. §365 after considering "sweeping changes" to the Code, and in light of certain other provisions contained in the Code which purport to give debtors certain other rights in the event of rejection of particular

12

kinds of executory contracts. *See Appellant's Opening Brief*, pp. 10-12. In so many words, Appellant argues that Congress's failure to carve out a specific exemption to allow for the survival of an arbitration provision contained in a rejected executory contract means that Congress did not intend for such provision to survive rejection. Quite to the contrary, when viewed in the light of what Congress has <u>affirmatively</u> stated in the context of the broader Federal Arbitration Act, the absence of any such specialized language in the Code is more properly viewed as an indication that Congress must not have believed it needed to say anything further.

Because the parties agreed to apply the Federal Arbitration Act to the arbitration provision, and because the contract involves interstate commerce, the Federal Arbitration Act ("FAA"), 9 USC § 1 *et. seq.*, plainly controls the enforceability of the arbitration provision in the Supply Agreement. Section 3 of the FAA provides that when a plaintiff brings a suit "upon an issue referable to arbitration under an agreement in writing for such arbitration," that a court "shall" stay the action until arbitration has been had in accordance with the terms of the parties agreement. 9 USC § 3. Section 4 of the FAA, in turn, empowers the court to compel arbitration of a dispute subject to arbitration. 9 USC § 4. Likewise, the Supply Agreement provides that all disputes between Fleming and Appellant arising from the Supply Agreement "are to be resolved by arbitration as provided herein," and that all arbitration "will be undertaken pursuant to the Federal Arbitration Act . . ." *See Supply Agreement*, Exh. "3", p. 3, ¶8.

The Supply Agreement was governed by the FAA not only by agreement, but also because it affects interstate commerce. The FAA applies to written arbitration provisions in contracts evidencing transactions involving "commerce." 9 U.S.C. § 2. Commerce, with certain exceptions not applicable here, means "commerce among the several states." *Id.* § 9. The

13

commerce requirement is construed broadly so as to be co-extensive with Congressional power to regulate under the commerce clause of the United States Constitution. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 US 265, 270 (1995). To fall within the scope of the FAA, a contract merely must affect or relate to interstate commerce. *See e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 US 395, 401, n. 7 (1967).

Here, the Supply Agreement covered Appellant's purchases of grocery inventory from Fleming; much of this inventory was shipped into Fleming's warehouse locations from other states before being delivered to Appellant. This impact on interstate commerce is sufficient to trigger the application of the FAA. *See Allied-Bruce*, 513 US at 269, 282 (enforcing arbitration clause in a contract with a local branch of a multi-state firm which shipped materials from out of state). Federal law governs all questions of enforceability, interpretation, construction, validity and revocability of the arbitration provision in question. *See e.g., Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 US 1, 24 (1983); *Prima Paint*, 388 US at 400. Arbitration is strongly favored under the Federal Arbitration Act. If there is any doubt as to the arbitrability of the claims arising under the Supply Agreement, such doubt must be resolved in favor of arbitration: "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 US at 24-25; *Metronic Avenue Inc. v. Advanced Cardiovascular Systems Inc.*, 247 F.3d 44, 55 (3rd Cir. 2001) ("[F]ederal policy favors arbitration and thus a court resolves any doubts about the scope of an arbitration agreement in favor of arbitration. There is a "presumption of arbitrability." An order to arbitrate "should not be denied unless it may be said

with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (emphasis added; internal citations omitted).

It is these authorities upon which the Bankruptcy Court relied in issuing its Order compelling arbitration of the disputes arising under the parties Supply Agreement. This central issue cannot be overstated. Indeed, though Appellant briefly states its acknowledgement of "the strong policy in favor of arbitration", it then goes to great length to assert that the *Moses Cohn* case, the Supreme Court decision establishing the pre-eminence of federal arbitration, and its progeny, is inapplicable to the present circumstance simply because *Moses Cone* did not "arise in the context of bankruptcy proceedings." *See Appellant's Opening Brief*, pp. 12-13. Far from being distinguishable, the *Moses Cone* case, and related cases, sets forth the analysis to be applied in the event that questions of arbitrability arise in the face of competing legal issues. As in *Moses Cone*, here there are countervailing interests regarding the enforceability of the arbitration provision in the Supply Agreement. On the one hand, there is the federally favored issue of dispute resolution via arbitration. On the other hand, there is, according to Appellant, an interest in enforcing the Code provisions regarding rejection of an executory contract.[1] In the face of similarly competing interests, *Moses Cone* dictates that the liberal construction to be afforded arbitration agreements dictates that emphasis be placed on <u>enforcing</u> mutually negotiated arbitration provisions as those provisions are recognized insofar as it can be determined by a federal district court that those provisions are the product of an agreement between the parties. *See Id.* at 940, n.27. There can be no doubt (and indeed, Appellant has never questioned) that the arbitration agreement contained in the Supply Agreement is the product of negotiation and mutual agreement of the parties. The strong federal policy in favor of enforcing arbitration provisions, coupled with the fact that the rejection of the executory contract

---

[1] This, of course, assumes *arguendo* that this Court rejects the reasoning set forth in Section A, above.

is only a breach of the contract and not a termination thereof, should lead this Court—as it did

the Bankruptcy Court—to conclude that the arbitration agreement should be enforced.

## V.    CONCLUSION

For all of the reasons set forth above, the PCT respectfully requests that the Order

be enforced as entered by the Bankruptcy Court.

Respectfully submitted this ___17___ day of March, 2006.

Laurence M. Huffman, Esq.
Beauchamp M. Patterson, Esq.
McAFEE & TAFT, P.C.
211 N. Robinson
10th Floor, Two Leadership Square
Oklahoma City, OK 73102
Telephone: (405) 235-9621

    - and -

By: _____
James E. O'Neill (Del. Bar. No. 4042)
PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 778-6407


ATTORNEYS FOR THE APPELLEE

1707181_1