EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21994811 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY
andNATIONAL RAILROAD PASSENGER
CORPORATION Plaintiff,
v.
AWS REMEDIATION, INC. Defendants.
No. Civ.A. 03-695.

Aug. 18, 2003.

Laura A. Biancke, Ronald P. Schiller, Piper
Rudnick LLP, J. Bradford McIlvain, Dilworth
Paxson LLP, Philadelphia, PA, John L. Moore, Jr.,
Piper Rudnick LLP, Washington, DC, for Plaintiff.
D. Matthew Jameson, III, Alan B. Rosenthal, Babst
Calland Clements & Zomnir PC, Pittsburgh, PA, for
Defendant.

*OPINION AND ORDER*
NEWCOMER, J.

### I. *Introduction*

*1 This is a declaratory judgment action. The
Plaintiffs' are requesting that this Court declare that
a contract dispute between the parties is not subject
to arbitration and enter a permanent injunction. The
Defendant seeks a declaration that the mandatory
arbitration clause in the contract applies. Currently
before the Court are the Parties' Cross Motions for
Summary Judgment. For the following reasons, the
Defendant's Motion shall be granted and the
Plaintiffs' Motion shall be denied.

### II. *Facts*

The facts surrounding this case are undisputed.
Accordingly, the Parties filed a stipulation of facts.

The relevant portions of these facts are stated below.

Amtrack and SEPTA (hereinafter referred to as the "
Rail Companies") entered into a contract
(hereinafter referred to as the "Paoli Agreement")
with a non-party, IT Group, for environmental
consulting at the Paoli Rail Yard Superfund Site. IT
Group subcontracted Defendant AWS to provide
certain labor and materials at the site. The
Defendant was not a signatory of the Paoli
Agreement. On January 11, 2002, the Rail
Companies unilaterally terminated the contract with
IT. IT filed for bankruptcy. During the bankruptcy
proceedings, the bankruptcy court authorized IT's
rejection of the Paoli Agreement to the extent there
were any executory obligations remaining under the
agreement.

While IT was in bankruptcy, the Defendant entered
into and Asset Purchase Agreement to buy the
accounts receivable allegedly owed to IT by the
Rail Companies under the Paoli Agreement
(hereinafter referred to as the "Paoli Receivables").
This agreement provides for the transfer of the
following assets:
2.1 *Assets Purchased*
...
(a) The Debtors' right and interest in all funds owed
by the Rail Companies to the Debtors, AWS and/or
the Paoli Subcontractors on the Paoli Contract
including but not limited to the Paoli Receivables
and any proceeds therefrom;
(b) all rights and interests of [IT] arising out of the
Paoli Contract against the Rail Companies
including, but not limited to claims for breach of
contract and tort;

The Asset Purchase Agreement purported to
transfer these assets without AWS "assuming any of
the liabilities or obligations of [IT]."

Because IT was bankrupt at the time of the Asset
Purchase Agreement it needed court approval to
consummate the sale of the Paoli Receivables. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 2

Not Reported in F.Supp.2d, 2003 WL 21994811 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Bankruptcy Court approved the Asset Purchase Agreement in an Order dated November 6, 2002. Responding to the objections of the Rail Companies, this Order modified the asset purchase agreement to the extent that all liens, claims, and encumbrancers held by the Rail Companies including those arising under the Paoli Agreement survived the sale of the accounts receivable. It also provided that any such claims were neither enhanced nor diminished, but existed to the same extent that they had prior to the Asset Purchase Agreement.

On December 23, 2002, the Defendant filed a demand for arbitration in an attempt to collect the Paoli Receivables. The demand for arbitration was based on an arbitration clause contained in the Paoli Agreement. Paragraph 17(b)(i) of the agreement provides:
*2 The parties hereto agree to binding arbitration ... of any claim or controversy arising out to the or relating to the formation or performance of [the Paoili Agreement] or any breach thereof.

The AAA choose not to resolve the issue of whether the clause was binding and stayed the proceedings pending the outcome of this case.

### III. *Discussion*

Because all the facts have been stipulated to, this case turns on issues of law. In determining the instant motions, the Court must answer the following questions: 1) When a party obtains certain rights under a contract which contains an arbitration clause, but is not specifically assigned the right to arbitrate, may the assignee compel arbitration? 2) When the contract containing an arbitration clause has been terminated by the non-bankrupt party and the debtor has rejected the contract in bankruptcy, can the arbitration clause still apply to contract disputes over pre-petition and termination events? and 3) Is notice that a debtor is transferring all claims related to a receivable sufficient to place creditors on notice of the transfer of the right to arbitrate that receivable? The Court answers these questions in the affirmative, and thus, will grant summary judgment for the Defendant.

### A. *The Claim Transferred from IT to AWS Arising Out of The Paoli Agreement was a Claim that Could Only be Remedied in Arbitration*

The nature of the property right transferred by IT compels a finding for the Defendant. The right at issue in the proposed arbitration is AWS's claim that the Rail Companies failed to pay money owed under the Paoli Agreement. This claim arose squarely from the Paoli Agreement itself. By the terms of the contract, this was a claim that could only have been brought in arbitration. In fact, no party could reasonably debate that if IT had attempted to exercise this claim, it could only have done so in arbitration.

Because IT's claim for breach of the Paoli Agreement could only have been brought in arbitration, IT could only have transferred a claim to arbitrate the breach to AWS. *See Carribean Steamship Co. v. Sonmez Denizcilik Ve Ticaret, A.S.,* 598 F.2d 1264, 1266-67 (2d Cir.1979) ("an assignee of a claim takes it with whatever limitations it had in the hands of the assignor"); *Banque De Paris Et Des Pays-Bas v. Amoco Oil Co.,* 573 F.Supp. 1464, 1469 (S.D.N.Y.1983) (a party "whose rights are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract"). It is a basic principle of law that a seller cannot transfer any rights greater than those which he possesses. *See U.S. v. Jacobs,* 304 F.Supp. 613, 622 (S.D.N.Y.1969) (rights of an assignee can be no greater than those of the original assignor). This principle is only bolstered in this case by the Bankruptcy Court's Order which explicitly stated that AWS's purchase of the Paoli Receivables would not diminish or enhance any claims under the contract. Looked at another way, IT could not transfer the right to bring a civil action based on a breach of the Paoli Agreement because IT never had that right under the contract.

*3 The Plaintiffs' argument that the only thing purchased by AWS was the Paoli Receivables completely divorced from the right to arbitrate, misses the mark. The right to arbitrate cannot be separated from the Paoli Receivables. To hold that the remedy for a claim arising under a contract

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3

**Not Reported in F.Supp.2d, 2003 WL 21994811 (E.D.Pa.)**
**(Cite as: Not Reported in F.Supp.2d)**

could be altered by merely assigning the claim would improperly change the very nature of the rights assigned. *GMAC Commerical Credit LLC v. Springs Indus., Inc.,* 171 F.Supp.2d 209, 216 (S.D.N.Y.2001). This would run afoul of basic contract law principles and the Bankruptcy Court's Order.

A simple hypothetical exposes the flaw in the Rail Companies' contention that without an explicit assignment of an arbitration clause the right to arbitrate is not transferred. Under this logic, a party to a contract containing an arbitration clause could transfer all the substantive portions of a contract to a third party except the arbitration clause. Because the arbitration clause had not been transferred, that third party would be immune from arbitration of any contract disputes. The same scenario could apply to a party seeking to avoid a liquidated damages clause, a choice of venue or law provision, or any other remdial mearsure in a contract. The law can simply not allow bargained for remedial rights to be avoided so easily.

B. *The Rail Companies Termination of the Paoli Agreement and IT's Rejection of the Agreement in Bankruptcy does not Invalidate the Arbitration Clause*

The Court disagrees with the Rail Companies' position that an contractual arbitration agreement dies with the contract. While a rejection or termination of an agreement may affect the arbitrability of events that occur after the date of termination or rejection, it cannot change the remedial limitations applied to pre-rejection events. Again, those rights must be adjudicated with the limitations under which they arose.

The argument that a party's unilateral termination of a contract voids the arbitration clause fails for obvious reasons. To allow a party to avoid arbitration by simply terminating the contract would render arbitration clauses illusory and meaningless. *See Chester City Sch. Auth. v. Abethaw Constr. Co.,* 333 A.2d 758, 764 (Pa.1975). A party not wishing to arbitrate its alleged breach could simply terminate that contract and avoid any obligation to

arbitrate.

Similar rational applies when a debtor rejects a contract. A rejection in bankruptcy does not alter the substantive rights of the parties that formed pre-petition. *See Sharon Steel Corp. v. National Fuel Gas Dist. Corp.,* 872 F.2d 36 (3d Cir.1989). While a debtor may reject a contract in its "entirety, " it may not invalidate freely negotiated methods of dispute resolution as they apply to pre-petition acts. *See Societe Nationale Algerienne Pour La Recherne v. Distrigas Corp.,* 80 B.R. 606 (D.Mass.1987). This principle is further supported in this case by the fact that IT only rejected the Paoli Agreement to the extent it was executory, and thus, its rejection has no impact on the claim for the Paoli Receivables which did not involve any further executory obligations. *See In re Monge,* 83 B.R. 305 (Bankr.E.D.Pa.1988) (rejecting the argument that a party's duty to pay account charges and existence of an arbitration provision make a contract executory under the bankruptcy code).

*4 The Rail Companies own actions have undermined their position that the Paoli Agreement is "dead," because they intend on relying on the contract in any dispute over the Paoli Receivables. The Rail Companies initially objected to the sale of the Paoli Receivables on the basis that its transfer was free of all liens and encumbrances. They sought and obtained a modification to the Asset Purchase Agreement which allows them to pursue any set asides, including those arising under the Paoli Agreement. In making this objection, the Rail Companies are acknowledging what they argue againstthe Paoli Agreement was not made irrelevant by the Rail Companies termination and IT's rejection, instead it is at the heart of any litigation over the Paoli Receivables. It would violate fair play to allow the Rail Companies to pursue set asides based on the "terminated" Paoli Agreement, but forbid AWS to apply the remedial provisions of the same contract.

C. *The Notice of the Sale of the Paoli Receivables Sufficiently Notifies Creditors of the Transfer of the Right to Arbitrate*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2003 WL 21994811 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

The Rail Companies argue that the right to arbitrate could not have been transferred to the Defendant because there was not sufficient notice of the sale as required by the bankruptcy code. Before a debtor can sell any of its assets it must give creditors notice of the proposed sale. 11 U.S.C. § 363(b)(1). This notice "is sufficient if it *generally* describes the property." Fed. R. Bankr. 2002(c)(1) (emphasis added).

The Court finds that the Notice given in this case complies with the requirements of § 363. As discussed above, the right to arbitrate is inherent in the purchase of the Paoli Receivables. The purchase of these receivables would put a party on notice that the assignee was obtaining the right to bring a claim for these receivablesa claim which can only be brought in arbitration. In fact, the description of the assets attached to the Notice stated that AWS was acquiring the Paoli Receivables and "all rights, claims and interests of the Debtors arising out of or related to the [Paoli Receivables]." This general description satfies Rule 2002, by placing creditors on notice that AWS was obtaining a right to arbitrate. Moreover, the purpose of the notice requirement does not dictate that it be strictly applied in this case. Section 363 requires notice of a sale to protect secured creditors and others from dissipation of estate assets. *In re Dant and Russell, Inc.,* 67 B.R. 360 (D.Ore.1986) (*citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 181-82 (1977)). In the instance case, the "asset" that the Rail Companies complain was transferred without notice was the ability to arbitrate the Paoli Receivables. This "asset" is without any value independent of the Paoli Receivables, and thus, its transfer does not further dissipate the assets of the bankruptcy estate. Accordingly, even if there was a failure to adequately notify, it was of no real consequence.

## IV. *Conclusion*

*5 For the foregoing reasons, the Court finds that a valid continuing right to arbitrate the Paoli Receivables was transferred to AWS, and that this transfer did not violate the bankruptcy code. Accordingly, the Court will grant summary judgment in favor of the Defendant. An appropriate

order will follow.

## *ORDER*

AND NOW, this day of August, 2003, upon consideration of the Parties' Cross Motions for Summary Judgment, the responses thereto, and the arguments of counsel heard by this Court, it is hereby ORDERED that the Defendant's Motion is GRANTED and the Plaintiffs' Motion is DENIED. It is further DECLARED that any dispute over the Paoli Receivables is subject to the arbitration provision of the Paoli Agreement.

AND IT IS SO ORDERED

E.D.Pa.,2003.
Southeastern PA Transp. Authority v. AWS Remediation, Inc.
Not Reported in F.Supp.2d, 2003 WL 21994811 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23905794 (Trial Motion, Memorandum and Affidavit) Plaintiff Southeastern Pennsylvania Transportation Authority's Reply Brief to AWS Remediation, Inc.'s Brief in Opposition to the Rail Companies' Motions for Summary Judgment (Apr. 18, 2003)
• 2003 WL 23905811 (Trial Motion, Memorandum and Affidavit) Plaintiff National Railroad Passenger Corporation's Reply Brief in Support of Motion for Summary Judgment (Apr. 18, 2003)
• 2003 WL 23905778 (Trial Motion, Memorandum and Affidavit) Aws Remediation, Inc.'s Reply Brief on Summary Judgment (Apr. 17, 2003)
• 2003 WL 23905761 (Trial Motion, Memorandum and Affidavit) Aws Remediation, Inc.'s Brief in Opposition to the Rail Companies' Motions for Summary Judgment (Apr. 11, 2003)
• 2003 WL 23905729 (Trial Motion, Memorandum and Affidavit) AWS Remediation, Inc.'s Brief in Support of Motion for Summary Judgment (Mar. 21, 2003)
• 2003 WL 23905744 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Summary Judgment (Mar. 21, 2003)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2003 WL 21994811 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**


• 2003 WL 23905714 (Trial Pleading) Answer and
Affirmative Defenses (Feb. 11, 2003)
• 2003 WL 23905697 (Trial Pleading) Complaint
for Declaratory Judgment and Injunctive Relief
(Feb. 03, 2003)
• 2:03cv00695 (Docket) (Feb. 03, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.