# EXHIBIT 3

Nov 18 04 11:21a        Barkley&Kennedy,Chtd.        301-762-2606        P.8

## SUPPLY AGREEMENT

THIS SUPPLY AGREEMENT (the "Agreement") is made and entered into this 1st day of March, 1996, by and between FLEMING COMPANIES, INC., an Oklahoma corporation ("Fleming"), and SELBY'S MARKET, INC., a Maryland corporation ("Retailer"), with reference to the following circumstances:

(i) Fleming is engaged in business as a full-line wholesale supplier of food, grocery and related products to the retail trade; and

(ii) Retailer is engaged in business as a retailer of food, grocery and related products and will operate a store in Poolesville, Maryland (the "Store"); and

(iii) Retailer will sublease the Store from Fleming (the "Sublease"); and

(iv) Retailer desires to benefit in services, predictability of supplies and pricing from a long-term supply agreement with Fleming.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants stated below, the parties agree as follows:

1. **Supply.** Throughout the term of this Agreement, Retailer will purchase from Fleming for the Store and Fleming will sell to Retailer food, grocery, related products and merchandise which Fleming offers for sale to its affiliated retailers (the "Products").

2. **Price and Other Terms of Sale.** Except as hereinafter provided, the Products sold to Retailer pursuant to this Agreement shall be priced, and other terms of sale shall be established, at levels which are generally consistent with Fleming's current Selling Plan, which is hereby incorporated by reference and which has been reviewed with Retailer, as amended from time to time by Fleming (the "Selling Plan"), including amendments which Fleming deems necessary to incorporate Fleming's Flexible Marketing Program ("FFMP"), provided such amendments, including those related to the FFMP, shall be applicable to all similarly situated customers of Fleming purchasing inventory pursuant to such amendments shall be applicable to all similarly situated customers of Fleming purchasing inventory pursuant to such Selling Plan. The parties acknowledge that Fleming anticipates that it will revise the Selling Plan by implementing the FFMP which will cover grocery, dairy, frozen food and supply purchases.

Retailer agrees to pay to Fleming fuel adjustment charges pursuant to terms heretofore reviewed with Retailer and any adjustments in freight which may vary from time to

of such deficiency in service level to attain an average service level of at least 90% prior to the failure to attain the required service level being deemed a default by Fleming hereunder.

7.  Default.

(a)  Default by Retailer. In the event Retailer fails to perform any of its obligations hereunder in any material respect, then Retailer shall be in default and Fleming shall have the right to immediately terminate this Agreement by written notice ("Notice of Termination") and pursue all other remedies available by reason of such default, including specific enforcement of the obligations of Retailer; all, however, in accordance with the following paragraph; provided, however, that in the event of a monetary default, Retailer shall have a period of five (5) days from receipt of the Notice of Termination from Fleming within which to cure such monetary default. Other than recovery of actual damages related to a monetary default, Fleming shall have no right to recover additional damages (whether characterized as consequential damages, punitive damages or otherwise).

(b)  Cross Default. Retailer hereby acknowledges and agrees that any material breach of this Agreement by Retailer will be deemed to be a breach of any and all other agreements by and between Retailer and Fleming, whether now in existence or hereafter entered into, including, without limitation, any and all lease agreements, sublease agreements, promissory notes, security agreements and license agreements. Upon breach of any such agreements, Fleming will be entitled to pursue all remedies legally available to it under those other agreements, including, without limitation, terminating those agreements, accelerating Retailer's obligations pursuant to those agreements, in seeking monetary damages and seeking equitable relief.

(c)  Default by Fleming. In the event Fleming fails to perform any of its obligations hereunder, then Fleming shall be in default and Retailer shall have the right to immediately terminate this Agreement by written notice ("Notice of Termination") and pursue all other remedies available by reason of such default, including specific enforcement of the obligations of Fleming, all, however, in accordance with the following paragraph; provided, however, that in the event of a monetary default, Fleming shall have a period of five (5) days from receipt of the Notice of Termination from Retailer within which to cure such monetary default. Other than recovery of actual damages related to a monetary default, Retailer shall have no right to recover additional damages (whether characterized as consequential damages, punitive damages or otherwise).

8.  Disputes; Arbitration. The parties hereto agree that all disputes between them relating to this Agreement are to be resolved by arbitration as provided herein. This agreement to arbitrate shall survive the rescission or termination of this Agreement. All arbitration shall be conducted in York, Pennsylvania, pursuant to the Commercial Arbitration Rules of the American Arbitration Association except as herein may be provided. The panel used will be selected from, if available, the "Food Industry Panel" employed by the American Arbitration Association and the decision of the arbitrators will be final and binding on all parties. All arbitration will be undertaken pursuant to the Federal Arbitration Act, where applicable, and the decision of the arbitrators will be enforceable in any court of competent jurisdiction.

In any dispute where a party seeks $50,000 or more in damages, three arbitrators will be employed. All costs attendant to the arbitration, excluding attorney's and expert's fees, will be borne equally by the parties. Each party will bear its own attorney's and expert's fees. The arbitrators will not award punitive, consequential or indirect damages. Each party hereby waives the right to such damages and agrees to receive only those actual damages directly resulting from the claim asserted. In resolving all disputes between the parties, the arbitrators will apply the law of the State of Maryland, except as may be modified by this Agreement. The arbitrators are by this Agreement directed to conduct the arbitration hearing no later than three months from the service of the statement of claim and demand for arbitration unless good cause is shown establishing that the hearing cannot fairly and practically be so convened.

Except as needed for presentation in lieu of a live appearance, depositions will not be taken. Parties will be entitled to conduct document discovery by requesting production of documents. Responses or objections will be served twenty days after receipt of a request. The arbitrators will resolve any discovery disputes by such prehearing conferences as may be needed. All parties agree that the arbitrators and any counsel of record to the proceeding will have the power of subpoena process as provided by law.

From related transactions in connection with this Agreement, the parties may be in a debtor/creditor relationship, which may include the granting of security interests in goods and/or fixtures, or in a relationship as lessor and lessee. The parties recognize that these kinds of relationships could give rise to the need by one or more of the parties for emergency judicial relief to regain possession of goods and/or fixtures, to prevent the sale or transfer of goods and/or fixtures, to protect real or personal property from injury or to obtain possession of real estate. The parties agree that either shall be entitled to pursue such remedies for emergency or preliminary injunctive relief in any court of competent jurisdiction, provided that each party agrees that it will consent to the stay of such judicial proceedings on the merits of both this Agreement and the related transactions pending arbitration of all underlying claims between the parties immediately following the issuance of any such emergency or injunctive relief.

9. Attorneys' Fees and Costs. In the event suit is brought to enforce any of the terms of this Agreement, the losing party will pay to the prevailing party its reasonable attorneys' fees and costs incurred in any such proceeding.

10. Amendment or Waiver. This Agreement will not be amended, nor will any of its terms be deemed to have been waived by either party, unless such amendment or waiver is in writing and signed by the parties hereto.

11. Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of Maryland.

12. Counterparts. This Agreement may be executed in multiple counterparts, which taken together will constitute one instrument and each of which will be considered an original for all purposes.

13. **Time is of the Essence.** The parties agree that time is of the essence under this Agreement.

14. **Notices.** All communications required or permitted under this Agreement will be in writing, and sent to the following addresses or to such other address requested by the parties by notice as herein provided:

    (a)    Notices to Fleming:

        Fleming Companies, Inc.
        1100 North Sherman Street
        P. O. Box 589
        York, Pennsylvania   17405

    (b)    Notices to Retailer:

        Selby's Market, Inc.
        ~~19942 Fisher Avenue~~ P O Box 96
        Poolesville, Maryland   28037

15. **Purchase of Store Supplies.** Upon the termination of this Agreement, Retailer will purchase from Fleming all store supplies which Fleming has purchased or obtained as supplies for Retailer and which, because of any special design, label, logo, quantity or other feature cannot be sold promptly by Fleming to other retailers being served by Fleming's distribution center which serviced Retailer during the term of this Agreement at the same price being paid for such supplies by Retailer. Retailer will pay to Fleming the then current price for such supplies being charged by Fleming to Retailer. Such amount will be paid and such supplies will be delivered by Fleming to Retailer within ten (10) days after termination of this Agreement.

16. **Miscellaneous.**

    (a)    **Board Authorization.** Retailer will execute and deliver any and all documents which may reasonably be requested by Fleming in order to properly document this Agreement, including, but not limited to, certified resolutions of the Board of Directors of Retailer authorizing the undersigned officer to enter into this Agreement.

    (b)    **Binding Effect.** This Agreement shall inure to the benefit of, and be binding upon, the parties hereto, their respective successors and assigns. Provided, however, that neither this Agreement nor the rights and obligations of Retailer hereunder shall be assignable by Retailer, and any purported assignment in contravention hereof shall be void without the consent of Fleming.

    (c)    **Exhibits.** Any Exhibit attached hereto is made a part hereof and is fully incorporated herein by reference.

(d) <u>Entire Agreement</u>. This Agreement embodies the entire understanding of the parties hereto in relation to the purchase of Products by Retailer from Fleming and supersedes any other agreement between the parties to the extent the latter covers the same subject matter. There are no representations, promises, warranties, understandings or agreements, express or implied, oral or otherwise, in relation thereto, except expressly referred to or set forth herein. Retailer acknowledges that the execution and delivery of this Agreement is its free and voluntary act and deed and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings or agreements made by Fleming, or its agents, officers, employees or representatives. No promise, representation, warranty or agreement made subsequent to the execution and delivery hereof by either party hereto, revocation, partial or otherwise, or change, amendment, addition, alteration, waiver or modification of this Agreement or any of the terms hereof will be enforceable unless the same be in writing and signed by the parties hereto.

(e) <u>Headings</u>. Headings or captions of the paragraphs in this Agreement are for convenience of reference only, and in no way define or limit or describe the intent of this Agreement or any provision of any paragraph hereof.

(f) <u>Inconsistency with Selling Plan</u>. In the event any of the terms and conditions of this Agreement are inconsistent with the terms and conditions of the Selling Plan, the terms and conditions of this Agreement will govern and prevail.

(g) <u>Partial Invalidity</u>. In the event that any of the provisions or portions thereof of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions or portions hereof will not be affected thereby.

)                                    )

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

COMPANIES
FLEMING ~~FOODS,~~ INC.,
An Oklahoma Corporation

By: _____
       VICE PRES

"FLEMING"

SELBY'S MARKET, INC.,
A Maryland Corporation

By: _____
       Roy L. Selby, Jr., President

"RETAILER"

OBJ\289723.3                                    -7-