**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: Fleming Companies, Inc. et al : | |
| : | |
| : | |
| : | |
| : | |
| Selby's Market Inc. : | |
| : | |
| Appellant : | Civil Action No. 05-749 (SLR) |
| v. : | |
| : | |
| PCT : | |
| : | |
| Appellee : | Bankruptcy Case No. 03-10945 |
| : | |

**APPELLANT'S REPLY BRIEF**

Neal M. Rosenbloom, Esquire
Sarit R. Shmulevitz, Esquire
FINKEL GOLDSTEIN
ROSENBLOOM & NASH, LLP
26 Broadway, Suite 711
New York, NY 10004
Telephone: (212) 344-2929
Facsimile: (212) 422-6836

- and -

Laurie Schenker Polleck, Esquire (No. 4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 3

    POINT I.    The Arbitration Clause Became Inoperative When the Supply Agreement was Rejected in Full ........................................................................ 3

    POINT II.    The Appellee Failed to Analyze the Federal Arbitration Act in Harmony with Section 365 of the Bankruptcy Code ....................................... 8

CONCLUSION ...................................................................................................... 11

## Table of Authorities

### **Cases**

Page

Acands, Inc. v. Travelers Casualty and Surety Company,
    435 F.3d 252 (3rd Cir. 2006) .......................................................................... 10

In re Audra-John Corp.,
    140 B.R. 752 (Bankr.Minn. 1992) .................................................................. 4

Braniff Airways, Inc. v. United Air Lines, Inc.,
    33 B.R. 33 (Bankr.N.D.Tex. 1983) ................................................................ 10

Eastover Bank for Savings v. Sowashee Venture
(In re Austin Development Company),
    19 F.3d 1077 (5th Cir. 1994).............................................................................. 5

In re Guild Music Corp.,
    100 B.R. 624 (Bankr. R.I. 1989) ...................................................................... 7

In re Italian Cook Oil Corp.,
    190 F.2d 994 (3rd Cir. 1951) ............................................................................. 3

Lee v. S. Schweiker,
    739 F.2d 870 (3rd Cir. 1984) ............................................................................. 3

Madison Foods, Inc. et al. v. Fleming Companies, Inc. et al. (In re Fleming Companies).,
    325 B.R. 687 (Bankr. Del. 2005) ...................................................................... 9

Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,
    460 U.S. 1 (1983) ............................................................................................. 9

Prima Paint Corporation v. Flood & Conklin Mfg. Co.,
    388 U.S. 395 (1967) ......................................................................................... 9

Schlumberger Resource Management Services, Inc., v.
Cellnet Data Systems, Inc. (In re Cellnet Data Systems, Inc.),
    327 F.3d 242 (3rd Cir. 2003).............................................................................. 3

Skeen v. Harms,
    10 B.R. 817 (Bankr.D.Col. 1981) ........................................................................ 4

Societe National Algerienne Pour La Recherche
Des Hydrocarbures Corp. v. Distrigas Corp.,
    80 B.R. 606 (D.Mass. 1987) ......................................................................... 3, 6

Sowashee Venture v. EB, Inc.,
    513 U.S. 874 ..................................................................................................... 5

In re Transamerican Natural Gas Corp.,
    79 B.R. 663 (Bankr.S.D.Tex. 1987) ................................................................. 4

**Statutes**

Bankruptcy Code, 11 U.S.C. § 101 et seq.

    Section 365(h) ................................................................................................ 2,8

    Section 365(i) ................................................................................................. 2,8

    Section 365(n) ............................................................................................... 2,8

    Section 365(d) (4) .......................................................................................... 6

Federal Arbitration Act, 9 U.S.C. §§ 1-14 .................................................................. 2

Appellant, Selby's Market Inc. ("Selby's"), by and through its attorneys, respectfully submits this Reply Brief in further support of its appeal from the Order dated September 16, 2005 (the "Order") issued by the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware finding that while the Appellee rejected the parties' Supply Agreement it did not reject the arbitration clause which remains effective and binding upon the parties. For the reasons set forth below, Selby's respectfully requests that this Court reverse the Order and find that once the Supply Agreement was rejected, it was rejected in full, including the arbitration clause.

## I.      SUMMARY OF ARGUMENT

Courts in the Third Circuit, as well as other circuits, have consistently held that once a debtor rejects an executory contract it is rejected in full for all purposes. That is, all of agreement's provisions are rejected whether they are desirable from a policy-based perspective, or whether the provisions themselves are executory. Under Section 365 of the Bankruptcy Code, it is the agreement as a whole that must be executory, not each individual clause.

Accordingly, when the Appellee-debtor rejected the Supply Agreement, all of the Agreement's provisions became inoperative. The cases cited by the Post Confirmation Trust ("PCT" or "Appellee") which simply advance the argument that arbitration is the "federally favored form of dispute resolution" are not controlling because in those cases the arbitration clause remained effective. By contrast, here, there simply is no arbitration clause for the Court to enforce because the Supply Agreement was rejected in full.

The Appellee goes to great lengths to argue that if all terms of an executory contract are rejected this would impermissibly have the same net effect as holding an

1

executory contract terminated upon rejection. This is not so. If a contract is terminated then liability lapses and a claimant has no right to file a claim. Additionally, termination means that third parties' rights are relinquished, and that effectively, the contract is as though it never existed. However, when a contract is merely rejected in full, as it was here, it is not terminated. The non-debtor retains a right to file a claim, and damages are assessed as of the date that the agreement was rejected.

Moreover, Congress did not intend these long-standing rules to be abrogated by the Federal Arbitration Act (the "FAA")[1]. Its intentions were made clear on two instances. First, Section 365 of the Bankruptcy Code explicitly sets forth those circumstances in which countervailing policies take precedence over general rejection principles. See e.g. 11 U.S.C. §§ 365(h)(1)(C), 365(i), 365(n). Had Congress intended to limit the rejection-in-full doctrine to non-arbitration clauses, it would have stated so.

Second, Congress recently enacted significant revisions to the Bankruptcy Code, including Section 365. Notably missing from such revisions is any indication whatsoever that Congress intended non-arbitration clauses to be treated differently under the revised statute. This Court should apply the general, long-standing rejection-in-full principle barring any showing that Congress intended otherwise.

In addition, the majority of the cases relied upon by the Appellee in its Brief in Opposition are inapplicable because, while they speak to the favorability of arbitration in general, they do not extend to situations in which an executory contract was rejected in

---

[1] The Federal Arbitration Act; Title 9, US Code, Section 1-14, was first enacted February 12, 1925 (43 Stat. 883), codified July 30, 1947 (61 Stat. 669), and amended September 3, 1954 (68 Stat. 1233). Chapter 2 was added July 31, 1970 (84 Stat. 692), two new Sections were passed by the Congress in October 1988 and renumbered on December 1, 1990 (PLs669 and 702); Chapter 3 was added on August 15, 1990 (PL 101-369); and Section 10 was amended on November 15.

2

bankruptcy.  Moreover, the Appellee's lead case, <u>Societe National Algerienne Pour La Recherche Des Hydrocarbures Corp. v. Distrigas Corp.</u>, 80 B.R. 606 (D.Mass. 1987), is easily distinguishable, has had a weak following, and is not controlling here.  The <u>Distrigas</u> Court explicitly stated that it departed from "mainstream" principles because of the unique facts of that case.

## II.      ARGUMENT

### POINT I

### THE ARBITRATION CLAUSE BECAME INOPERATIVE WHEN THE SUPPLY AGREEMENT WAS REJECTED IN FULL

The Third Circuit, as well as courts across all circuits, have repeatedly found that it would be unfair and unruly to enable a debtor to reject an agreement while at the same time compelling enforcement of certain provisions in the agreement that are beneficial to it.  See <u>Schlumberger Resource Management Services, Inc. v. Cellnet Data Systems, Inc. (In re Cellnet Data Systems, Inc.)</u>, 327 F.3d 242 (3rd Cir. 2003) ("Under the Bankruptcy Code, a trustee may elect to reject or assume its obligations under an exectuory contract.  This election is an all-or-nothing proposition – either the whole contract is assumed or the entire contract is rejected."); <u>In re Italian Cook Oil Corp.</u>, 190 F.2d 994 (3rd Cir. 1951) ("The trustee, however, may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens.  He cannot accept one and reject the other"); <u>Lee v. S. Schweiker</u>, 739 F.2d 870 (3rd Cir. 1984) ("a debtor may not assume the favorable aspects of a contract and reject the unfavorable aspects of the same contract").  Similarly, here, when the Supply Agreement was rejected, it was rejected in full deeming the arbitration clause inoperative and unenforceable.

3

Appellee's contention that only the executory provisions of the Supply Agreement were rejected is unfounded. While agreeing that Selby's "cited cases unquestionably stand for the proposition that a debtor cannot reject an executory contract, thereby relieving the estate of the burden of further performance under the contract while at the same time demanding return performance from an affected creditor" (Appellee's Brief in Opposition at 9-10), PCT asseverates that this universal holding applies only to executory performance obligations remaining under the contract. However, neither the Order, the Bankruptcy Code, learned treatises such as Collier on Bankruptcy, nor the cases cited by the Appellant support this claim. This interpretation is of PCT's own making. PCT's erroneous interpretation is also directly contradicted by cases in which the "all-or-nothing" principle was applied to contract provisions which were even less executory than an arbitration clause. See e.g. In re Transamerican Natural Gas Corp., 79 B.R. 663 (Bankr.S.D.Tex. 1987) (holding that once contract rejected, the damages clause is also rejected); In re Audra-John Corp., 140 B.R. 752 (Bankr.Minn. 1992) ("debtor's rejection encompasses the covenant of noncompetition").

Moreover, the arbitration clause in the Supply Agreement is in fact executory in that it requires performance obligations from both parties. See e.g. Skeen v. Harms, 10 B.R. 817 (Bankr.D.Col. 1981) ("the [debtor-in-possession as distinct entity] rule was extended to a case involving an executory arbitration contract against a trustee"). Although there is no precise definition of what constitutes an executory contract, "the legislative history of Section 365 suggests that executory contracts generally include 'contracts on which performance remains due to some extent on both sides'." Id. at 820 (internal citations omitted). Contrary to PCT's claims, the arbitration clause does confer

a particular benefit on PCT. Otherwise, PCT would not be litigating this matter. It also imposes future performance requirements on Selby's and PCT.

Appellee is equally wrong in stating that "[t]o give effect to Appellant's argument, which is essentially that the rejection of an executory contract in bankruptcy means that all terms and provisions contained in the contract are of no remaining force or effect, would impermissibly have the same net effect as holding an executory contract terminated upon rejection, rather than merely breached as of the date of the filing of the petition." (Appellee's Brief in Opposition p. 4, emphasis omitted). Nowhere has the Appellant argued that liability terminated when the contract was rejected. Rejection refers to the debtor's decision not to assume the remaining obligations of a lease or executory contract, and does not remove a claim for a breach of contract. Nor does rejection mean that a contract effectively does not exist. Moreover, rejection does not necessarily extinguish rights accrued by and among third parties. Hence courts have consistently stated that a rejected contract is not terminated or void, and that "rejection" and "termination" have different meanings.

The distinction between "rejection" and "termination" is further illustrated by the case Eastover Bank for Savings v. Sowashee Venture (In re Austin Development Company), 19F.3d 1077 (5th Cir. 1994), cert. denied Sowashee Venture v. EB, Inc., 513 U.S. 874, in which the Court found that third parties retain certain rights notwithstanding rejection of an executory contract or lease. In Austin Development, the debtor was a lessee under a ground lease and sublessor of a movie theater it built. It assigned its interest in the ground lease and the theater's income stream to a bank as security for various loans. During its Chapter 11 proceeding, the debtor's inaction led to an

5

automatic rejection of its ground lease under 11 U.S.C. § 365(d)(4). The district court and bankruptcy court held that the rejection of the lease effected the termination of the bank's rights under the ground lease and the bank's assignment of the theater sublease. The Fifth Circuit reversed and remanded.

The Fifth Circuit found that the debtor's rejection did not effect a termination of the debtor's lease, or an implied forfeiture of the rights of third parties. The Court stated that "rejection is treated as a breach to preserve the rights of the party whose lease with the debtor has been rejected by providing a prepetition claim; if rejection were deemed a complete immediate termination, it is not clear what the measure of the creditor's claim would be." Id. at 1082. In short, rejection in full is not the equivalent of termination. When the Supply Agreement was rejected its provisions became inoperative but liability and the right to damages remained intact.

Moreover, Appellee's reliance on Societe National Algerienne Pour La Recherche Des Hydrocarbures Corp. v. Distrigas Corp., 80 B.R. 606 (D.Mass. 1987) is misplaced. Not only was Distrigas wrongly decided, it is seldom followed despite having been decided over nineteen years ago, and, by the Court's own admission, departs from the "mainstream." Id. at 611. The holding in Distrigas it is necessarily limited to its particular facts and does not control under the present circumstances, where the dispute does not contain a significant international dimension. The Distrigas Court expressly stated:

> [i]n general terms, it has been fairly stated that '[w]here compelling arbitration of disputes conflicts with other important federal policies, the courts have frequently refused to order arbitration.' citing Bache Halsey Stuart, Inc. v. French, 425 F.Supp. 1231, 1233 (D.C.Cir. 1977), Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3rd Cir. 1983), cert. denied 464 U.S.

6

>   1038, 104 S.Ct 699, 79 L.Ed.2d 165 (1984); <u>Allegaert v. Perot</u>, 548 F.2d 432 (2nd cir. 1977), <u>cert. denied</u> 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977).
>
>   <u>These decisions, however…do not control under the present factual circumstances, especially where the dispute contains a significant international dimension.  The two most salient facts of the present case, as it now stands, which serve to distinguish it from the mainstream are the international character of the transaction and the presence of a failed Chapter 11 debtor.  These characteristics are of substantial import</u>.  (emphasis added).

<u>Id.</u> at 611.  The Court then went on to state:

>   [t]he line of decisions which conclusively tip the judicial scale in favor of arbitration…are [] a line of United States Supreme Court opinions which enthusiastically endorse an internationalist approach towards commercial disputes involving <u>foreign entities</u>. (emphasis added).

<u>Id.</u> at 612.

The case <u>In re Guild Music Corp.</u>, 100 B.R. 624 (Bankr. R.I. 1989) is instructive and illustrates <u>Distrigas</u>' limited application.  In <u>Guild Music</u>, the Court, referring to <u>Distrigas</u>, stated that "where the controversy is not of an international nature, and particularly, where the Chapter 11 debtor is likely to be successful in its reorganization, the Bankruptcy Code 'impliedly modifies' the Arbitration Act."  <u>Id.</u> at 627. The Court highlighted that in <u>Distrigas</u> it was observed that "the two most salient facts which distinguish it from the mainstream are the international character of the transaction and the presence of a failed Chapter 11 debtor." <u>Id.</u>

7

# POINT II

## THE APPELLEE FAILED TO ANALYZE THE FEDERAL ARBITRATION ACT IN HARMONY WITH SECTION 365 OF THE BANKRUPTCY CODE

Selby's does not dispute the import of the FAA in resolving disputes generally, however, nothing in the FAA or the Bankruptcy Code suggest that the policies favoring arbitration trump the policies underlying the Bankruptcy Code and long-established legal precedents. PCT argues that arbitration is the federally favored form of dispute resolution. (Appellee's Brief in Opposition at 2). Even if, generally, this were true, PCT fails to reconcile this notion with the abecedarian rule that an executory contract or lease is rejected in full notwithstanding any beneficial provisions of the agreement which may promote efficiency or be otherwise desirable. Congress explicitly created special rights and obligations that apply within bankruptcy notwithstanding a conflict with other desirable policies. For example, the very concept of rejection conflicts with the concept of sanctity of contract which furthers economic development.

Where inconsistencies exist among two areas of law, the courts must determine Congress' intention. Here, Congress' intention is clear: while arbitration is a favored dispute resolution mechanism outside of bankruptcy, it cannot be compelled when an executory contract containing the arbitration clause is rejected. Congress' intention is evidenced in two ways: first, Congress explicitly specified certain circumstances in which nonbankruptcy law and policies do apply despite rejection. See e.g. 11 U.S.C. §§ 365(h)(1)(C), 365(i), 365(n). Using common principles of statutory interpretation, it can safely be concluded that had Congress intended that arbitration clauses not get rejected alongside other provisions it would have provided so.

Second, Congress recently made significant revisions to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[2] which became effective on October 17, 2005.  Notably, while several changes were made to the Bankruptcy Code, including changes to Section 365, Congress did not amend the Bankruptcy Code in any way that would suggest that the FAA was intended to supercede it.  PCT argues that "when viewed in the light of what Congress has affirmatively stated in the context of the broader Federal Arbitration Act, the absence of any specialized language in the Code is more properly viewed as an indication that Congress must not have believed it needed to say anything further."   (Appellee's Brief in Opposition at 13).  However, PCT rendering the FAA as the "broader" statute does not make it so.  In fact, the FAA does not have the same force and effect in the realm of bankruptcy, and Congress' recent changes to the Bankruptcy Code (or lack thereof) are a strong indication that it did not intend Section 365 to be overridden.

That PCT has failed to analyze the FAA in concert with Section 365 is further illustrated by its reliance upon cases that, while finding arbitration desirable, were not decided in the context of bankruptcy.   For example, the Appellee cites Prima Paint Corporation v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967).  While in Prima Paint the Supreme Court spoke favorably about arbitration generally, this case did not arise in the context of bankruptcy proceedings, and a rejected contract was not involved.    Unlike in Prima Paint, here, PCT lost its contractual right to arbitrate when it rejected the Supply Agreement and all of its provisions.  Similarly, Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1 (1983) is inapplicable since it did not address the interplay between the two statutes.  The Appellee also relies on Madison Foods, Inc. et al.

---

[2] Pub. L. No. 109-8 (2005).

9

v. Fleming Companies, Inc. et al. (In re Fleming Companies)., 325 B.R. 687 (Del. Bankr. 2005). However, it is not surprising that Judge Walrath in Madison Foods reached the same conclusion that she reached in this case below, given that the same Judge and the same Chapter 11 bankruptcy proceedings were involved in both instances. Having made a mistake the first time in Madison Foods, Judge Walrath made a similar error in this case.

It is undisputed that arbitration must give way to bankruptcy rules in numerous instances. For example, despite PCT's argument that arbitration policy always supercedes bankruptcy rules, Circuit Court Judge Alito, in Acands, Inc. v. Travelers Casualty and Surety Company, 435 F.3d 252 (3rd Cir. 2006), recently affirmed that arbitration proceedings were subject to the Bankruptcy Code's automatic stay provision and policy. Moreover, in Braniff Airways, Inc. v. United Air Lines, Inc., 33 B.R. 33 (Bankr.N.D.Tex. 1983), the Court found that the debtor was not required to submit to binding arbitration because congressional policy giving the Bankruptcy Court exclusive jurisdiction in certain bankruptcy matters overrode provisions of the FAA. The Court stated that:

> With the enactment of the Bankruptcy Code in 1978, Congress created a comprehensive framework to deal with the specialized area of bankruptcy problems, intending to centralize all disputes concerning such matters in the Bankruptcy Court, and consequently, intended that the arbitration act would not apply to bankruptcy matters.
> …
> I conclude that this congressional policy overrides the provisions of the Arbitration Act.

Id. at 34. The Court found that arbitration was not workable because, as here, "[i]t is possible that an arbitration panel would resolve those issues as to these

10

specific parties in one fashion with this court resolving them differently for all other creditors having similar claims." Id. at 36.

### III.     CONCLUSION

For the foregoing reasons, Selby's respectfully requests that this Court (a) find that the arbitration clause is inapplicable to the parties' dispute, (b) reverse the Bankruptcy Court's September 16, 2005 Order, and (c) grant such other and further relief as this Court deems appropriate.

Dated:  March 31, 2006

              Respectfully submitted,

              Neal M. Rosenbloom, Esquire
              Sarit R. Shmulevitz, Esquire
              FINKEL GOLDSTEIN
              ROSENBLOOM & NASH, LLP
              26 Broadway, Suite 711
              New York, NY 10004
              Telephone: (212) 344-2929
              Facsimile: (212) 422-6836

              - and -

              /s/ Laurie Schenker Polleck
              Laurie Polleck, Esquire (No. 4300)
              JASPAN SCHLESINGER HOFFMAN LLP
              913 North Market Street, 12th Floor
              Wilmington, DE 19801
              (302) 351-8000

              ATTORNEYS FOR THE APPELLANT

H:\Sarit\Selby's Reply.doc