IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| FLEMING COMPANIES, INC., ) | |
| et al., ) | Bk. No. 03-10945 (MFW) |
| ) | |
| Debtors. ) | |

| | |
|---|---|
| SELBY'S MARKET, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civ. No. 05-749-SLR |
| ) | |
| PCT, ) | |
| ) | |
| Appellee. ) | |

**MEMORANDUM ORDER**

At Wilmington this 16th day of March, 2007, having reviewed the appeal filed by Selby's Market, Inc. ("Selby's"), and the papers filed in connection therewith;

IT IS ORDERED that the appeal is denied. The decision of the bankruptcy court dated September 15, 2006 is affirmed, for the reasons that follow.

1. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With

mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a *de novo* basis bankruptcy court opinions. See In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

2. **Question presented.** Does an arbitration clause survive the rejection of an executory contract pursuant to 11 U.S.C. § 365(g)?

3. **Background facts.** In March of 1996, Selby's and debtor Fleming Companies, Inc. ("Fleming") entered into a certain supply agreement ("the Supply Agreement") pursuant to which Fleming, as wholesaler, agreed to supply Selby's, as retailer, with retail food, groceries, and related products and merchandise on a long term basis. The Supply Agreement contained, *inter alia*, a provision by which the parties agreed to have "all disputes between them relating to this Agreement . . . resolved by arbitration" ("the Arbitration Clause"). (D.I. 11, ex. A at ¶ 8) For a number of years, Selby's received the bulk of its food supplies from Fleming in accordance with the terms of the Supply Agreement.

2

4. In April of 2003, Fleming filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. By a motion dated February 13, 2004, Fleming moved to reject over 1,100 executory contracts, including the Supply Agreement. On November 15, 2004, the bankruptcy court approved a stipulation between Fleming and Selby's, dated November 5, 2004, which effectively deemed the Supply Agreement rejected as of March 10, 2004. (D.I. 11, ex. B)

5. After voluntarily asserting its right as a Chapter 11 debtor to reject the Supply Agreement, Fleming filed for arbitration before the American Arbitration Association seeking to pursue a claim against Selby's for its alleged default in the sum of $1,132,258.75 plus interest, penalties, and arbitration fees. (D.I. 11, ex. C) By a motion dated December 28, 2004, appellee herein, acting on behalf of Fleming,[1] moved for an order compelling arbitration of claims relating to the Supply Agreement and staying certain state court proceedings initiated by Selby's to stay the arbitration, which motion was argued to the bankruptcy court. (D.I. 11, ex. D)

6. The bankruptcy court issued an order concluding that PCT's rejection of the Supply Agreement, pursuant to 11 U.S.C. § 365, was "not a termination of the Supply Agreement, but [was] simply a breach of that Agreement as of the Petition Date (§ 365(g)), and the arbitration clause contained therein is otherwise enforceable by the PCT." (D.I. 13, ex. 1 at 1) It is from this order that Selby's has filed its appeal.

---

[1] Appellee, the Trustee of the Post Confirmation Trust for Fleming Companies, Inc. ("PCT"), assumed all collection efforts on behalf of Fleming's bankruptcy estate in July 2004.

7. **Analysis.** Under the Bankruptcy Code, a trustee may elect to reject or assume its obligations under an executory contract. If the contract is assumed, the trustee "is entitled to receive the benefits under the [contract] but, at the same time, is responsible for performing its obligations thereunder." In re Trans World Airlines, Inc., 145 F.3d 124, 136 (3d Cir. 1998). Conversely, pursuant to the language of § 365(g), "the rejection of an executory contract . . . of the debtor constitutes a breach of such contract." The parties dispute the consequences of the statutorily imposed "breach".

8. Appellant Selby's argues that, once an executory contract is rejected in bankruptcy, it is rejected in its entirety, i.e., the election to assume or reject an executory contract "is an all-or-nothing proposition - either the whole contract is assumed or the entire contract is rejected." In re CellNet Data Sys., Inc., 327 F.3d 242, 249 (3d Cir. 2003). See also Lee v. Schweiker, 739 F.2d 870, 876 (3d Cir. 1984) ("[A] debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of 'recoupment')."); 3 Collier on Bankruptcy § 365.03[1] (15th ed. Rev. 2006) ("An executory contract may not be assumed in part and rejected in part. The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."). Therefore, according to Selby's, PCT may not reject the Supply Agreement while at the same time compelling enforcement of the Arbitration Clause.

9. Appellee PCT argues that, by the plain language of the statute, "a rejected executory contract is rejected for purposes [only] of all **executory performance**

**obligations** remaining under the terms of the contract," i.e., those obligations which "are intended to be the bargained-for benefit of the contract." (D.I. 13 at 10 (emphasis in original)) According to PCT, arbitration provisions do "not seek to compel payment or impose (or bar) any other substantive performance or related relief under a contract, but seek[] only to order the means by which disputes are resolved." (Id.) Therefore, the bankruptcy court was correct in enforcing the Arbitration Clause. In support of its position, PCT cites to Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp., 80 B.R. 606 (D. Mass. 1987). The district court in that case concluded that the arbitration clause contained in the contract at issue should be viewed as "'separable' from the principal contract" because it "represent[s] the freely-negotiated method of dispute resolution selected **in advance** by the parties." Id. at 609 (emphasis in original). "[A]llowing an arbitration clause to be automatically invalidated along with the principal agreement would be akin to destroying 'precisely what the parties had sought to create' as a dispute resolution device." Id. (quoting Lummus Co. v. Commonwealth Oil Refining Co., Inc., 280 F.2d 915, 924 (1st Cir. 1960)).

10. As far as the court can discern, there are no Third Circuit cases directly on point. However, in constructing an analytical framework for this dispute, there are certain underpinning principles that have been recognized by the Third Circuit. First, the Third Circuit has explained that rejection of an executory contract "does not alter the substantive rights of the parties" to the contract. Megafoods Stores, Inc. v. Flagstaff Realty Assocs., 60 F.3d 1031, 1034 (3d Cir. 1995). Accord Cinicola v. Scharffenberger, 248 F.3d 110, 119 n.8 (3d Cir. 2001). Rather, rejection "both cuts off any right of the

contracting creditor to require the estate to perform the remaining executory portions of the contract and limits the creditor's claim to breach of contract." Univ. Med. Ctr. v. Sullivan, 973 F.2d 1065, 1075 (3d Cir. 1992) (citing Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n, 826 F.2d 434, 436-37 (6th Cir. 1987) ("Thus, rejection or assumption of an executory contract determines only the status of the creditor's claim, i.e., whether it is merely a pre-petition obligation of the debtor or is entitled to priority as an expense of administration of the estate.")). See also In re Trans World Airlines, Inc., 145 F.3d 124, 136 (3d Cir. 1998); In re Columbia Gas Sys., Inc., 50 F.3d 233, 238-39 & n.8 (3d Cir. 1995). Clearly, then, rejection under § 365(g) is not tantamount to termination of the contract. Accord Thompkins v. Lil' Joe Records, Inc., --- F.3d ---, 2007 WL 316302, at *7 (11th Cir. Feb. 5, 2007).

11. Having determined that an executory contract rejected under § 365(g) is not "cancelled, repudiated, rescinded, or in any other fashion terminated," id. (citation omitted), it stands to reason that an arbitration clause survives rejection as well. The question remains whether the arbitration clause should be enforced. The Third Circuit has held that, "[w]here an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, **unless** the party opposing arbitration can establish congressional intent, under the McMahon standard,[2] to preclude waiver of judicial remedies for the statutory rights at issue." In re Mintze, 434 F.3d 222, 231 (3d Cir. 2006) (emphasis in original). The Third Circuit further concluded in In re Mintze that, absent statutory claims created by the Bankruptcy Code,

---

[2] Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220 (1987).

6

there is no "inherent conflict between arbitration . . . [and] the Bankruptcy Code." Id. at 231-32.

12. It is apparent that the causes of action at issue[3] derive from the contractual relationship of the parties and are not "bankruptcy actions that the Bankruptcy Code created for the benefit of the creditors of the estate." Id. at 230. Moreover, the Third Circuit has held, under similar circumstances, that "in the context of arbitration, a litigant's procedural right to the agreed forum is raised to a substantive right by the FAA." Olde Discount Corp. v. Tupman, 1 F.3d 202, 213 (3d Cir. 1993). See also Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 533 (3d Cir. 2005) (stating that an agreement to arbitrate is "coextensive with the substantive obligations assumed by" the contracting party under the contract).

13. **Conclusion.** Although the Third Circuit has broadly declared that the election to assume or reject under § 365(a) is an "all-or-nothing proposition," the parties have not identified an analysis of § 365(g) by the Third Circuit which speaks directly to the issue at bar. And, indeed, the Third Circuit in CellNet cited In re Trans World Airlines, Inc., 145 F.3d at 136, for the unremarkable proposition that, once a contract is rejected under § 365, the debtor is relieved of its remaining obligations under the contract and the "non-breaching party" is relegated "to an unsecured creditor." In re CellNet Data Sys., Inc., 327 F.3d at 249. Given the Third Circuit's predilection for narrow and precise statutory construction, see In re Am. Pad & Paper Co., --- F.3d ---,

---

[3]According to the bankruptcy court's order, "only matters relating to the sale of food, groceries and related products and merchandise by Fleming to Selby's Market, Inc. (and Selby's Market Inc.'s defenses thereto) as set forth within the Supply Agreement are subject to arbitration." (D.I. 11, ex. E)

7

2007 WL 624346 (3d Cir. Mar. 2, 2007), the bankruptcy court did not err in holding that rejection under § 365(g) constitutes a breach of the rejected contract, not a termination, and that an arbitration clause not only survives rejection, but should be enforced (absent statutory claims created by the Bankruptcy Code) consistent with the strong policy favoring arbitration. In other words, the breach of contract claims generated by the rejection should be resolved through arbitration, as agreed by the parties.

*[signature]*
United States District Judge